263 P.2d 302

## CITY OF PHOENIX
### v.
### LANE.
No. 5845.

Supreme Court of Arizona.

Nov. 13, 1953.

William C. Eliot, City Atty., and George T. Fike, Asst. City Atty., Phoenix, for petitioner.

Ross F. Jones, Atty. Gen., and Earl E. Weeks, Asst. Atty. Gen., for respondent.

Harry L. Buchanan, City Atty., and F. Dale Healy, Asst. City Atty., Tucson, amicus curiae.

UDALL, Justice.

Original application by the City of Phoenix, a municipal corporation, herein

referred to as petitioner, seeking a writ of prohibition against C. L. Lane Superintendent of the Motor Vehicle Division, Arizona State Highway Department, herein referred to as respondent. The matter comes before us as a result of respondent's interpretation of the provisions of the Motor Vehicle Safety Responsibility Act, being Chapter 122, Laws 1951, as amended by Chapter 68, Laws 1952 (now appearing as Article 13, Chapter 66, 1952 Cumulative Supplement, A.C.A.1939) to the effect that drivers of motor vehicles owned by the state or a political subdivision thereof are not exempt from the security and suspension provisions of the Act.

The stipulated facts are that one Kenneth Kunselman is employed by petitioner as a fire engineer. On July 28, 1953, in responding to a fire alarm and in the regular course of his employment, he was operating a fire truck owned by the City of Phoenix, and at the intersection of 15th Avenue and Buckeye Road he collided with a truck owned by the Cudahy Packing Company. Pursuant to law a report of said accident was filed with respondent and in due time the driver, Kunselman, was notified that he must deposit security in the sum of $700 on or before October 4, 1953 or his operator's license would be suspended. It was further stipulated

"That Kenneth Kunselman had not and has not complied with the financial security provisions of the Motor Vehicle Safety Responsibility Act with respect to his duties in driving fire apparatus owned and operated by the City of Phoenix, * * *."

Pursuant to his aforesaid interpretation of the Act, respondent is taking steps to suspend the operator's license held by Kunselman. Petitioner claims this attempted exercise of quasi-judicial powers will deprive it of a valued employee without authority of law, because in the circumstances set forth Kunselman is exempt from the provisions of the Act. The writ of prohibition is a proper remedy if in fact respondent is acting without or in excess of his jurisdiction, see, Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527; Johnson v. Betts, 21 Ariz. 365, 188 P. 271; 50 C.J., Prohibition, sections 3, 20, and 41; 73 C.J.S., Prohibition, §§ 6, 8, 11(a), and 11(j)—subdivision (11), and section 17.

Because the matter is of statewide concern, affecting the operation of all motor vehicles owned by the United States, the State of Arizona, and any political subdivision thereof, we have assumed original jurisdiction and issued an alternative writ of prohibition. These political divisions acting—as here—in their governmental capacity and discharging their functions as such, ought not be hampered by a lack of licensed drivers unless the statute expressly applies to this situation.

The question for our determination has been ably briefed by counsel for the respective parties, including counsel appearing as amicus curiae, and oral arguments

were presented before the case was ordered submitted for decision.

■ There are certain rules for our guidance which may be laid down, viz.:

1. As the safety responsibility Act carries penalties for its violation it is penal in character in the aspect here presented and not remedial. Such a law is to be interpreted strictly against the state and liberally in favor of the citizen. 50 Am.Jur., Statutes, sections 14, 15, 16, 407, 408, and 409. See also Tavegia v. Bromley, 67 Wyo. 93, 214 P.2d 975.

2. If the law be found to be clear, there is nothing to interpret, as it is not our prerogative to *rewrite* the law to accomplish what counsel for respondent considers the prime object of the Act, i. e., full and complete insurance coverage for the public under any and all circumstances, where injury or damage results from an automobile accident.

3. In this jurisdiction, since our decision in State v. Sharp, 21 Ariz. 424, 189 P. 631, the law is well settled that the state is vested with immunity from liability for acts of negligence by its agents arising out of purely governmental activities. With certain well-defined exceptions not here involved, this is also true of other political subdivisions including municipalities. See, Jones v. City of Phoenix, 29 Ariz. 181, 239 P. 1030; City of Phoenix v. Greer, 43 Ariz. 214, 29 P.2d 1062. For later cases setting forth the exceptions, see: Industrial Commission v. Navajo County, 64 Ariz. 172, 167 P.2d 113; Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304; Taylor v. Roosevelt Irr. Dist., 72 Ariz. 160, 232 P.2d 107. In Hartford Accident, etc., Co. v. Wainscott, 41 Ariz. 439, 19 P.2d 328, we held that inasmuch as political subdivisions are not liable for the negligent acts of their agents when they are engaged in governmental functions, that public funds may not be spent to purchase contracts of insurance to protect the county from a non-existent liability.

■ The Act, Chap. 122, Laws 1951, as originally enacted contained the following provision, which is still in full force and effect:

Sec. 33. "Exceptions.—This act shall not apply with respect to any motor vehicle owned by the United States, this state or any political subdivision of this state or any municipality therein; nor, except for sections 4 and 26 of this act, with respect to any motor vehicle which is subject to the requirements of any provisions of the existing law requiring insurance or other security on certain types of vehicles."

Respondent contends that this section deals only with the suspension of registration of vehicles owned by the governmental bodies named. He urges that it has no application to the suspension of operators' licenses. However, nothing indicates that the broad language used was ever meant to be so limited. Upon its face the language is broad enough to warrant the construction that the

whole Motor Vehicle Safety Responsibility Act shall in no manner whatsoever apply with respect to any motor vehicle falling within the above exceptions. We believe that when the legislature declared the whole Act should not apply with respect to such vehicles, it meant that drivers thereof should be left in the same position as they were before the enactment, their rights and liabilities being neither abridged nor enlarged.

In the only reported case in point, the Supreme Court of Minnesota speaking through Chief Justice Loring in City of St. Paul v. Hoffmann, 223 Minn. 76, 25 N.W.2d 661, 662, interpreted a statute similar to ours, Section 31 of which provided:

"This act does not apply with respect to any motor vehicle owned and operated by the United States, this state or any political subdivision of this state or any municipality therein." M. S.A. § 170.51.

It was held the Act did not apply to a city employee involved in an accident while driving a municipally-owned or operated vehicle. The court pointed out that the Minnesota Act operates exclusively by suspension of licenses to operate motor vehicles and not against the vehicles themselves, and therefore the exclusion of the city's vehicles from operation of the Act must mean exclusion of the drivers. Counsel for respondent argues that because the Arizona Act operates by suspension of registration certificates and plates, as well as by suspension of operators' licenses, there is a clear distinction in the two laws. But as hereinbefore pointed out, the state is not liable for the torts of its servants, nor are the political subdivisions liable when acting in a governmental rather than a proprietary capacity. Certainly the legislature did not intend the gross futility of applying the suspension and security provisions of our Act to governmental bodies that do not have a substantive law liability. Therefore, as far as the state and the political subdivisions acting in a governmental capacity are concerned, the exemption provisions of the Act can only refer to the operators of the vehicles, and hence the reasoning of the Minnesota court is fully applicable.

Respondent argues that the exemption provisions of Section 33, supra, were enacted solely to relieve him from the burden of attempting to determine which functions of state political subdivisions are proprietary, and suspending registrations of automobiles after accidents occurring therein. Why then make reference to the State of Arizona, which has not yet consented to be sued in either capacity? Why not spell out such construction in unmistakable language? We do not believe this exemption was created because of supposed difficulties in administration without it. The reason might have been that security is beside the point if there is no liability, and unnecessary if there is, because judgments against political subdivisions are collectible by oth-

·er means. Perhaps the legislature did not want to interfere with the operations of government. Inasmuch as the legislative purpose in creating these exemptions is somewhat shrouded, we must follow general principles, construe the statute strictly against the state, and avoid the creation of penalties by construction.

The Act was amended by Chapter 68, Laws 1952, by adding subsection (5) of Section 66–1306, A.C.A.1939, which in our opinion clinches the nail. That section reads:

"Exceptions to requirement of security. * * *

"(5) In the event the driver at the time of an accident was driving a motor vehicle owned, operated or leased by the employer of such driver and with the permission of the employer then the security provisions of this chapter shall apply to the employer and the suspension provisions of this chapter shall apply to the registration of all vehicles not covered by insurance, bond or self-insurance certificate at the time of the accident which vehicles were owned, operated or leased by the employer and shall not apply to such driver."

It is conceded that at the time of the accident Kunselman was driving a fire truck owned by the City of Phoenix with the permission of petitioner. Respondent apparently concedes, and we agree, that this section was never meant to create any new substantive law liability on the part of governmental bodies for the acts of their employees, and urges that to effectuate the purpose of the Act and provide full insurance coverage for all automobile accidents we should hold that a driver employed by one not subject to liability to respond in damages does not fall within the scope of the above exemption. We must take the statute as it is written, and as we read it there is not the slightest intimation of the intention that it shall be construed in such a manner. To the contrary, the Act flatly states that in these circumstances it does not apply to the driver of the vehicle.

The respondent, in seeking to apply the Act to the Phoenix fireman who does not own the vehicle and who is employed by the City of Phoenix, is extending the provisions of the Act to a person who does not come within them and to whom the Act has no application. Respondent is therefore acting in excess of his jurisdiction in administering the Act in this manner.

The alternative writ of prohibition heretofore issued is made peremptory.

STANFORD, C. J., and PHELPS, LA PRADE and WINDES, JJ., concur.