694 P.2d 1174

**ARIZONA NEWSPAPERS ASSOCIATION, INC., a non-profit Arizona corporation; Phoenix Newspapers, Inc., an Arizona corporation; and News Sun, Inc., an Arizona corporation, Petitioners,**

v.

**The SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Marilyn Riddel, a Judge thereof; and Maricopa County, a body politic; Maricopa County Board of Supervisors; Hawley Atkinson, Supervisor; Tom Freestone, Supervisor; George L. Campbell, Supervisor; Fred Koory, Jr., Supervisor; Ed Pastor, Supervisor; and Cherie Pennington, Clerk of the Maricopa County Board of Supervisors, real parties in interest, Respondents.**

No. 17406-SA.

Supreme Court of Arizona, En Banc.

Jan. 16, 1985.

Brown & Bain by Paul F. Eckstein, David J. Bodney, C. Timothy Delaney, Phoenix, for petitioners.

Thomas E. Collins, Maricopa County Atty. by Noel J.R. Levy, Phoenix, for respondents.

HOLOHAN, Chief Justice.

On January 23, 1984, the Maricopa County Board of Supervisors passed a resolution discontinuing newspaper publication of the full minutes of its proceedings. Petitioners, Arizona Newspapers Association, Inc., Phoenix Newspapers, Inc. and News Sun, Inc., challenged the Supervisors' action in superior court as violative of A.R.S. § 11–217 governing "publication" of county proceedings and the open meeting law provisions of A.R.S. § 38–431 *et seq.* The superior court upheld the decision of the Board, and this petition for special action challenges the superior court judgment. We accepted jurisdiction pursuant to Article 6, Section 5 of the Arizona Constitution and Rule 4, Rules of Procedure for Special Actions, 17A A.R.S., as there was no adequate remedy by appeal and the matter was of statewide importance.

On August 3, 1984, during the pendency of this action before this court, an amendment to A.R.S. § 11–217 became effective, indisputably mandating newspaper publication of county boards of supervisors proceedings. At issue then is whether pre-amendment A.R.S. § 11–217 requires the Maricopa County Board of Supervisors to publish the full minutes of its proceedings from its suspension date, January 23, 1984 through the effective date of amendment, August 3, 1984. Our disposition of this issue obviates the need to address whether the Board violated the open meeting laws, A.R.S. § 38–431 *et seq.*

The Board decided on January 23, 1984, by a three-to-two vote, to discontinue publishing the minutes of its proceedings in a newspaper of general circulation. The resolution provided in pertinent part:

BE IT RESOLVED that the Board of Supervisors of Maricopa County, Arizona pursuant to A.R.S. [§] 11–217, shall transcribe, record, and publish its proceedings in full in a book designated the "minute book of the board" and otherwise make minutes available to the public not later than one month after each meeting.

Instead of directing publication of its minutes in a newspaper, the Board interpreted the publication requirement of A.R.S. § 11–217 as sanctioning a more limited manner of publication. In effect, the Board resolved to "publish" by transcribing its minutes in a book which would be available at the clerk's office.

On January 26, 1984, petitioners filed a complaint for special action in the superior court, challenging the action of the Board as violating A.R.S. § 11–217. At the time of filing the special action that statute provided:

> Each board shall cause to be recorded in full all proceedings had by it in a book designated the minute book of the board. The full minutes of proceedings shall be published not later than one month after each meeting.

On February 6, after a hearing, Judge Riddel ruled against the petitioners. By minute entry dated February 7, 1984, Judge Riddel clarified her earlier ruling by finding that "[o]n the merits of the application, as a matter of law, the Court finds that A.R.S. 11–217 does not indicate that 'publication of the minutes' means in a newspaper." Formal judgment was entered against petitioners on February 9, 1984. The instant petition for special action was filed in this court on February 14, 1984.

█ A.R.S. § 11–217 was amended by the legislature on May 3, 1984 to provide publication "in the official newspaper of the county." Laws 1984, Second Regular Session Ch. 368, Sec. 1. The new section became effective August 3, 1984. Our task therefore is to determine whether pre-amendment § 11–217 (hereinafter § 11–217) requires newspaper publication of Board proceedings. The critical determination is the meaning of the term "publish" in § 11–217. If statutory language is not subject to different interpretations, we need look no further than the text of the statute to determine legislative intent. *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 667 P.2d 1304 (1983).

█ We believe the term "publish" in § 11–217 is subject to a variety of definitions such that reference to the statute alone does not provide clear guidance for disposition of the issue at bar. For example, *Webster's Third New International Dictionary* lists the following definitions of "publish": "[t]o declare publically: make generally known: disclose, circulate ... to import knowledge to one or more persons ... to officially proclaim ... to make a public evaluation of ... to place before the public (or through a mass medium)." Where ambiguity in statutory terms exists we are free to consider other information in addition to the words of the statute to determine the legislative intent. To find legislative intent, we consider the context of the statute, the language used, the subject matter, the historical background, the effects and consequences, and the spirit and purpose of the law. *See Dupnik v. MacDougall*, 136 Ariz. 39, 664 P.2d 189 (1983); *Mardian Construction Co. v. Superior Court*, 113 Ariz. 489, 557 P.2d 526 (1976); *State ex rel. Flournoy v. Mangum*, 113 Ariz. 151, 548 P.2d 1148 (1976); *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974); *State v. Rice*, 110 Ariz. 210, 516 P.2d 1222 (1973).

In 1901, the Revised Statutes of Arizona Territory, Section 3780 (§ 1 of Title 58) provided that "[t]he minutes of the boards of supervisors of the various counties of the territory shall be *published in some newspaper* published in the county where said boards are located" (emphasis added). In 1909, the territorial legislature clarified the law:

> They [the boards of supervisors] shall cause to be *published* the full minutes of proceedings so had by them, as aforesaid, *in some newspaper or newspapers,* as are now provided by law for publishing the proceedings of municipal and county boards. Said publication of said proceedings of said boards shall be made not later than one month after each meeting of said boards and shall be printed in type not larger than that used in the body of the paper.

Section 2414, Title 10, Revised Statutes of Arizona (1913) (emphasis added). During this period, both parties agree that state law specifically required the county boards of supervisors to publish in a newspaper the full minutes of its proceedings.

In 1928, the Arizona Code was recodified, leaving out the language "in some newspaper or newspapers." The 1928 version required the county boards of supervisors to "cause to be published the full minutes of proceedings not later than one month after each meeting." Section 771, Revised Code (1928). The 1939 Arizona Code in Section 17–306 retained the same language as the 1928 version. Finally, in 1956, the most recent version of the provision, the language became "[t]he full minutes of proceedings shall be published not later than one month after each meeting." A.R.S. § 11–217 (1977).

■ Respondents contend that the 1928 revision of the law, which omitted the phrase "in a newspaper," removed the requirement of newspaper publication. Petitioners argue that the 1928 revision provided no substantive change in the publication requirement but, rather reduced wordiness. We agree with petitioners. We have consistently held that

> It was the object of the code commissioner and the legislature in preparing the Revised Code of 1928 to change the legal meaning of the existing law as little as possible, but, as stated in the preface to the official edition of said Code, "to reduce in language" and to avoid redundancy. Chapter 35, Sess. Laws 1925. We should therefore presume that when a word, a phrase, or a paragraph from the 1913 code is omitted from the code of 1928, the intent is rather to simplify the language without changing the meaning, than to make a material alteration in the substance of the law itself.

*In Re the Estate of Sullivan*, 38 Ariz. 387, 392–393, 300 P. 193, 195 (1931). *Accord State ex rel. Bean v. Hardy*, 110 Ariz. 351, 519 P.2d 50 (1974). We find no reason in this case to deviate from this well-established view of the effect of the 1928 revision of the 1913 Code. Accordingly, to determine the meaning of the 1928 version of the statute, we refer to the 1913 version. "Publish" in that early version meant "in a newspaper" and that same meaning must be deemed to have been carried forward in the 1928 version, and therefore the 1956 version.

We also find historical significance in the admission by respondents that "at all times between 1909 and January 1, 1984, Maricopa County has caused to be published in a newspaper in Maricopa County the minutes of the meetings of the Maricopa County Board of Supervisors." Additionally, we note that on March 18, 1871, the minutes of the Board of Supervisors of Maricopa County included the following entry: "The clerk of this board is ordered to have an abridged copy of the day's proceedings published in the 'Arizona Miner.'" This longstanding 74 year practice of publication of the minutes in a newspaper suggests to us that the Board, up until January 23, 1984, consistently interpreted § 11–217 and its predecessors as requiring publication in a newspaper. Further, we are informed by the parties that every other county board except that of La Paz County publishes its minutes in a newspaper, apparently agreeing with the interpretation that § 11–217 requires publication in a newspaper. We assume that our legislature was informed of such a construction and yet made no change in the statute to relieve the counties from contracting with newspapers to publish the minutes.

The history of § 11–217 and its predecessor plus the common interpretation placed on it convince us that the term "publish" means publish in a newspaper.

Respondents next argue that because the 1928 version substantively changed the publication requirements for the minutes of municipal proceedings, that the same kind of change must have been intended for county minutes. In essence, respondents argue that laws affecting cities are *in pari materia* with laws affecting counties. We disagree, for we find significant differences between publication requirements for

each governmental entity. The most obvious difference is one of size and diversity between a city and a county.

Respondents also argue that if the legislature meant "publish in a newspaper," it would have so provided as it has done in other statutes. Since it has not done so, they argue, publish cannot mean "in a newspaper." Respondents would have this court ignore the fact that both "recorded" and "publish" appear in § 11–217, which clearly demonstrates that the legislature considered the two terms as mandating different acts. Treating "publish" as meaning "record" would render the latter term superfluous, an effect we choose to avoid. *See State v. Superior Court*, 113 Ariz. 248, 550 P.2d 626 (1976).

In supplemental memoranda to this court, the parties have argued about the significance of the recent amendment to § 11–217 on this court's interpretation of "publish." Pointing to 1956 as the last time this section was altered by the legislature, respondents argue that too much time has passed since that time for the recent amendment to have the effect of clarifying or defining the language of § 11–217. Petitioners argue that the significant date to consider in relation to the recent amendment is the date that the respondents decided to no longer publish in a newspaper the full minutes of their proceedings, January 23, 1984. When that date is considered, petitioners argue, the recent amendment closely followed the controversy that developed between the parties, and therefore should be deemed to have been a response to that controversy. We believe that petitioners have merit in their position on the recent amendment, but in light of our previous analysis it is not necessary for us to rely on that proposition.

Historically, this state has always favored open government and an informed citizenry. Until the current challenge to the statute anyone interested in learning about the business of county government could do so by reading the minutes of the board as published in a newspaper. The actions of the respondents would severely limit public access to information about the business of county government. Such a result is contrary to the history or intent of § 11–217.

The judgment of the superior court is vacated, and the case is remanded to the superior court with directions to grant petitioners the relief sought.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.