735 P.2d 792

**The STATE of Arizona, Petitioner,**

**v.**

**The Honorable Lina S. RODRIGUEZ, Judge of the Superior Court, Division 1, County of Pima, State of Arizona, Respondent,**

**and**

**Kevin Edward KARL, Real Party in Interest.**

**No. CV–86–0494–PR.**

Supreme Court of Arizona, En Banc.

April 9, 1987.

Stephen D. Neely, Pima Co. Atty. by John R. Gustafson, Louis M. Spivack, Deputy Co. Attys., Tucson, for petitioner.

Frederic J. Dardis, Pima County Public Defender by Rebecca A. McLean, Karen Noble, Asst. Public Defenders, Tucson, for real party in interest.

Gila-La Paz-Pinal-Coconino-Apache-Yuma-Pima-Maricopa Co. Attys. and The Atty. Gen. by Joe Albo, Jr., Gila Co. Atty., Steven P. Suskin, La Paz Co. Atty., Roy A. Mendoza, Pinal Co. Atty., Stephen G. Udall, Apache Co. Atty., David S. Ellsworth, Yuma Co. Atty., Stephen D. Neely, Pima Co. Atty., Thomas E. Collins, Maricopa Co. Atty., John Verkamp, Coconino Co. Atty., Robert K. Corbin, The Atty. Gen., amicus curiae.

FELDMAN, Vice Chief Justice.

Kevin Edward Karl (defendant) pleaded guilty to second degree murder. A.R.S. §§ 13–710, –1104 (Supp.1985). A dispute arose over whether Karl could become eligible for parole while serving the agreed-upon sentence. Because of the parties' conflicting interpretations of the special sentencing provision of § 13–710, Pima County Superior Court Judge Lina S. Rodriguez rejected the plea agreement. The state then filed a special action [1] in the court of appeals, which declined jurisdiction without comment. The state petitioned for review.

We accepted review on this issue of first impression to resolve the confusion over the punishment for second degree murder. Rule 31.19, Ariz.R.Crim.P., 17 A.R.S. (Supp.1986). We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3).

FACTS

Karl was indicted for first degree murder for the July 25, 1985 stabbing death of his wife. In May 1986, Karl agreed to plead guilty to second degree murder in exchange for dismissal of the first degree murder charge. At the time the offense was committed, the sentencing statute for second degree murder required the court to impose a presumptive term of "fifteen calendar years," which could be increased or decreased by five years if the court found aggravating or mitigating circumstances. A.R.S. § 13–710 (Supp.1985). The plea agreement stipulated that defendant would serve a sentence of "fifteen calendar years."

At the change-of-plea hearing before Judge Rodriguez, defense and state attorneys clashed over the meaning of "calendar years." Defense attorneys said the term did not change the general statutory rule that a person is eligible for parole after serving one-half of a sentence. A.R.S. § 41–1604.06(D). The state, on the other hand, argued that the legislature used the term "calendar years" in A.R.S. § 13–710 with the obvious intent of prohibiting parole so that one convicted of second degree murder must serve the sentence day-for-day ("flat time") with no possibility of parole.

Although Judge Rodriguez believed that "calendar years" meant flat time, she took notice that the Arizona Department of Corrections (DOC) and many divisions of the Pima County Superior Court had been interpreting § 13–710 as not changing the general rule of A.R.S. § 41–1604.06(D) that defendants become parole eligible after serving half their sentence.[2] Because of the divergent views, the judge ruled that there had been no meeting of the minds and correctly rejected the plea bargain. See Rule 17.2(b), Ariz.R. Crim.P., 17 A.R.S. (judge must advise defendant of possible sentence, including any special parole conditions). The case is not moot because the parties still have a proposed plea agreement. Even if it were, this issue requires resolution. We have jurisdiction to proceed despite mootness and will do so where the public interest would be served by deciding the questions

---

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." See Rule 1, Arizona Rules of Procedure for Special Actions, 17A A.R.S.

2. The Attorney General had reached this conclusion. Op.Ariz.Att'y Gen. No. R86–015 (April 17, 1986).

presented.[3] *State v. Valenzuela*, 144 Ariz. 43, 44–45, 695 P.2d 732, 733–34 (1985).

## DISCUSSION

### A. *Background*

Before 1984, first degree murder and conspiracy to commit first degree murder were the only class 1 felonies. A.R.S. §§ 13–1105 (Supp.1983–84), –1003(D). The punishment for these offenses was death or life imprisonment "without possibility of parole until the completion of the service of twenty-five calendar years, ..." § 13–703(A) (Supp.1983–84); *see also* § 13–1003(D). All other felony offenders were sentenced pursuant to A.R.S. §§ 13–604, –702 (Supp.1983–84).

Until 1984, those convicted of second degree murder received the same sentence as those convicted of any other class 2 felony. A.R.S. § 13–702 (Supp.1983–84). Class 2 felonies included attempted first degree murder (§§ 13–1001, –1105), armed robbery (§ 13–1904), kidnapping (§ 13–1304), and sexual assault (§ 13–1406). A first-time class 2 offender of a nondangerous nature felony could be sentenced to a minimum of 5.25 years and a maximum of fourteen years, with parole eligibility at half the sentence. § 13–702(B) (Supp.1983–84); § 13–701(B)(1). The offense was dangerous in nature if the defendant committed the felony while either (1) using or exhibiting a deadly weapon or dangerous instrument, or (2) intentionally or knowingly inflicting serious physical injury. In that event, the defendant could receive a minimum sentence of seven years and a maximum of twenty-one years, and be eligible

for parole only after serving two-thirds of the sentence. A.R.S. § 13–604(G) (Supp. 1983–84).

In 1984, the legislature reclassified second degree murder, making it a class 1 felony. A.R.S. § 13–1104 (Supp.1984–85). The legislature also added a special sentencing statute providing that "the term of imprisonment for a person guilty of second degree murder ... is fifteen calendar years." A.R.S. § 13–710 (Supp.1984–85). That statute did not explicitly deny parole eligibility as did the first degree murder sentencing statute.[4] The term "calendar year" was not defined in the criminal statutes and was used only in one other statute—the first degree murder sentencing statute. *Id.*

In 1985, the legislature amended § 13–710 slightly to provide that "a person who stands convicted of second degree murder ... shall be sentenced to a presumptive term of fifteen calendar years." Then, in 1986, the legislature seemingly reacted to the confusion created by the interplay between §§ 13–710 and 41–1604.06(D) by adding a definition of "calendar year" to the criminal code. The legislature also made a statement about its previous intent:

> [O]ur purpose in adding a definition for "calendar years" to A.R.S. section 13–105 is not to make a change in the law as it already exists, but merely to clarify what our intent always has been. Our use elsewhere in Title 13 of the phrase "calendar years" has always been intended to mean: three hundred sixty-five days actual time served without release, suspension or commutation of sentence,

---

3. In an application for permission to appear amicus curiae, eight county attorneys and the state attorney general estimated that at least thirty defendants have been sentenced pursuant to § 13–710, and others are awaiting trial or negotiating plea bargains. The DOC has recalculated release dates for those defendants already sentenced in accordance with a superseding AG opinion stating that "calendar years" means flat time. Op.Ariz. Att'y Gen. No. R86–015 (July 7, 1986).

4. A.R.S. § 13–703(A) (Supp.1984–85) reads in pertinent part:

> A person guilty of first degree murder as defined in § 13–1105 shall suffer death or imprisonment in the custody of the department of corrections for life, without possibility of parole until the completion of the service of twenty-five calendar years ...

A.R.S. § 13–710 (Supp.1984–85) reads as follows:

> The term of imprisonment for a person guilty of second degree murder as defined by § 13–1104 is fifteen calendar years. The sentence may be decreased or increased by up to five years. The reduction or increase shall be based on aggravating and mitigating circumstances contained in § 13–702, subsections D and E.

probation, pardon or parole, work furlough or release from confinement on any other basis.

SB 1232, 37th Leg., 2d Reg.Sess., Journal of the Senate, 527 (1986). This definition became effective August 13, 1986. The new definition of "calendar years" is "three hundred sixty-five days actual time served without ... parole." A.R.S. § 13–105(3) (Supp.1986). Therefore, we must determine the correct sentence for second degree murders occurring between August 3, 1984 and August 13, 1986. The question is whether those sentenced to second degree murder for crimes committed between those dates must serve flat time or whether they become parole eligible after serving half their sentence.

### B. *Arguments*

The state contends that "calendar years" clearly means a fixed, uninterrupted period. According to the state, trial judges use the term interchangeably with the terms "flat time" and "day-for-day" time. *See, e.g., State v. Rickman*, 148 Ariz. 499, 504, 715 P.2d 752, 757 (1986) (trial judge sentencing defendant commented that "calendar years" means flat time, day-for-day). Furthermore, the former parole statute used the term to denote a fixed period. *See* A.R.S. § 31–411 (Supp.1977–78) (a prisoner must serve more than "one calendar year" before applying for parole); *cf.* § 13–703 (Supp.1986) (no release until serving twenty-five "calendar years"). The state argues that an interpretation making those sentenced to a term of "calendar years" parole eligible in "half-time" would frustrate legislative intent and distort the sentencing proportionality for which the legislature strives. A.R.S. § 13–101.

The defendant, on the other hand, argues that the legislature has explicitly denied parole in numerous statutes, and would have used similar language in § 13–710 if it meant to change the general rule of parole eligibility at half time set out in A.R.S. § 41–1604.06(D):

> [T]he prisoner's earliest parole eligibility occurs when the prisoner has served one-half of his sentence unless such prisoner is sentenced according to any provisions of law which prohibit the release on any basis until serving not less than two-thirds of the sentence imposed by the court, the sentence imposed by the court or any other mandatory minimum term, in which case the prisoner must have served the sentence required by law.

The defendant contends that if the legislature meant § 13–710 to be a "provision of law which prohibit[s] the release on any basis ...," it would have tracked the language used in statutes explicitly denying parole eligibility.[5] Defendant emphasizes that the many statutes explicitly denying or limiting parole eligibility show that the legislature was capable of using specific language. Defendant argues, therefore, that the courts should not read an excluded term into § 13–710. *See State v. Hunter*, 137 Ariz. 234, 239, 669 P.2d 1011, 1016 (App.1983); *Banks v. Arizona State Board of Pardons & Paroles*, 129 Ariz. 199, 203, 629 P.2d 1035, 1039 (App.1981).

### C. *Resolution*

Ordinarily, we do not resort to rules of statutory interpretation unless the meaning of statutory language is unclear or ambiguous. *Arizona Newspapers Association v.*

---

**5.** For instance: A.R.S. §§ 13–604 (Supp.1983–84) (some dangerous or repetitive offenders are not parole eligible until serving two-thirds of the sentence imposed); § 13–703(A) (Supp.1983–84) (those convicted of first degree murder shall be sentenced to death or life imprisonment "without possibility of parole until the completion of the service of twenty-five calendar years, ..."); § 13–1206 (Supp.1984–85) (until 1984 those convicted of assault by a prisoner received life imprisonment with no parole eligibility for twenty-five years; amended in 1984 to a class 3 felony with parole eligibility at two-thirds time); §§ 13–1405, –1406 (Supp.1983–84) (those convicted of sexual conduct with a minor under fifteen or sexual assault are "not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough, or release from confinement on any other basis ... until the sentence imposed by the court has been served."); § 13–1410 (Supp.1983–84) (child molesters are not eligible for parole until serving two-thirds of the sentence); § 13–3406(B)(2) (Supp.1981–82) (those convicted of certain narcotic drug offenses are not eligible for parole until serving two-thirds of the sentence); §§ 28–692.01(F), –692.02(C) (Supp.1984–85) (those convicted of repetitively driving under the influence of intoxicating liquor are not eligible for parole until serving six months).

*Superior Court*, 143 Ariz. 560, 562, 694 P.2d 1174, 1176 (1985); *State v. Sweet*, 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985). Because of the confusion generated by the term "calendar years," we concede that the meaning is unclear. Traditionally, if a criminal statute was susceptible of different interpretations, we adopted the construction most favorable to the defendant. *See, e.g., City of Phoenix v. Lane*, 76 Ariz. 240, 243, 263 P.2d 302, 303 (1953), *overruled on other grounds, Lindsey v. Duncan*, 88 Ariz. 289, 356 P.2d 392 (1960). Now, however, courts are to construe criminal statutes according to "the fair meaning of their terms to promote justice and effect the objects of the law." A.R.S. § 13–104; *State v. Tramble*, 144 Ariz. 48, 51, 695 P.2d 737, 740 (1985).

When a statute is unclear or ambiguous, we must determine and give effect to legislative objects and intent. *Calvert v. Farmers Insurance Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). We determine this by examining the language used, the context of the statute, the subject matter, the historical background, the effects and consequences, and the spirit and purpose of the law. *Arizona Newspapers*, 143 Ariz. at 562, 694 P.2d at 1176.

> If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent. If the statutes relate to the same subject or have the same general purpose—that is, statutes which are in pari materia—they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law. As they must be construed as one system governed by one spirit and policy, the legislative intent therefor must be ascertained not alone from the literal meaning of the wording of the statutes but also from the view of the whole system of related statutes. This rule of construction applies even where the statutes were enacted at different times, and contain no reference one to the other. . . .

*Sweet*, 143 Ariz. at 270–71, 693 P.2d at 925–26; *accord Dupnik v. MacDougall*, 136 Ariz. 39, 42, 664 P.2d 189, 192 (1983).

We conclude that the legislature intended "calendar years" to mean that those convicted of second degree murder were to receive flat time sentences. First, we must give some content to the word "calendar." *See State v. Superior Court*, 113 Ariz. 248, 249, 550 P.2d 626, 627 (1976) (no word in statute should be rendered superfluous, void, contradictory, or insignificant). The word "years" alone in § 13–710 would have accomplished the statutory construction advanced by defendant—that the legislature used the word "calendar" because it was concerned about leap years. *See, e.g., Ex parte Johnson*, 53 Ariz. 161, 166, 87 P.2d 107, 109 (1939) (probationary term had not expired because a calendar year applied to a leap year). Defendant claims that the legislature merely meant that one given a fifteen-year sentence would be imprisoned from January *1*, 1985 to January *1*, 2000 regardless of the leap years containing 366 days, but would still be eligible for parole after serving half the sentence. We find this argument unpersuasive because it is difficult to believe that the legislature added "calendar" to the statute merely out of concern that prisoners sentenced to second degree murder would be released several days early. If the legislature had been worried about early releases because of leap years, presumably it would have adopted a statute applicable to all sentences for a term of years. We refuse to give § 13–710 a meaning which renders it insignificant or frivolous.

More significantly, examining § 13–710 in context with the rest of the criminal statutes, we are persuaded by the state's argument that the defendant's interpretation of the statute would result in absurdly disproportionate penalties. For instance, one convicted of second degree murder would be eligible for parole before one convicted of attempted second degree murder, dangerous nature. A.R.S. § 13–710, –1104, –604(G) (Supp.1984–85). Those convicted of sexual offenses on children could be sentenced to serve significantly longer terms than those convicted of second degree murder. §§ 13–1406, –604.01 (Supp. 1986).

It is inconceivable that the legislature reclassified second degree murder to a class 1 felony intending that penalties for less serious crimes be greater or that the punishment for second degree murder be decreased. Clearly, the legislature intended to increase the punishment when it reclassified second degree murder from a class 2 to a class 1 felony. Before the reclassification, one convicted of second degree murder dangerous nature could receive a twenty-one-year sentence with no parole eligibility until serving fourteen years. §§ 13–1104, –604(G) (Supp.1983–84). The maximum sentence a defendant may receive now is twenty years and, under defendant's construction, he would be eligible for parole after ten years. This result would mean that although the legislature reclassified the crime so as to make it a more serious offense, it actually reduced the severity of the punishment.[6]

Although the legislature could have used explicit language to deny parole as it did in other criminal statutes, we find no logical explanation for the term "calendar years" except to construe it as requiring that the sentence be served flat time. We hold, therefore, that one sentenced pursuant to A.R.S. § 13–710 for crimes committed between August 3, 1984 and August 13, 1986 must serve the entire sentence imposed with no parole eligibility.[7]

■ We have interpreted the language of § 13–710 without taking into account the definition of "calendar years" added in 1986 or the legislature's later statement of its intent in using the term. We do not find the legislature's subsequent expressions of its previous intent particularly persuasive. Although our greatest concern in this case is to determine legislative intent, the doctrine of separation of powers does not permit us to accept legislative messages regarding the meaning of its *past* actions. Contemporaneous expressions of legislative intent are, of course, quite helpful.

It necessarily follows from our analysis that the later legislative definition of "calendar year" clarified rather than changed the meaning of § 13–710. *See Sweet, supra.* Therefore, defendant's argument that applying the definition retroactively is an ex post facto violation is without merit. We have not applied the definition retroactively, but interpreted the language in effect from 1984 to 1986. *See Sweet, supra;* A.R.S. § 1–246.

## CONCLUSION

Relief is granted in accordance with the state's prayer. Under A.R.S. § 13–710, the sentence for second degree murder committed between August 3, 1984 and August 13, 1986 is a range of ten to twenty years. The term imposed must be served flat time with no parole eligibility. The case is remanded for proceedings consistent with this opinion.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.

Justice JACK D.H. HAYS participated in the determination of this matter but retired prior to the filing of this opinion.

Justice JAMES MOELLER did not participate in the determination of this matter.

---

**6.** Looking at other changes in the criminal code, we find it impossible to believe that the legislature intended to reduce the severity of the punishment for second degree murder. During each legislative session in the mid–1980s, the Arizona Legislature substantially increased the punishment for serious crimes. In 1985, for instance, the legislature increased penalties for those convicted of crimes, including second degree murder, against victims younger than fifteen years old. *See, e.g.,* §§ 13–604.01, –703, –1304, –1404 to –1406 (Supp.1985). And in 1986, the legislature increased punishment by creating a presumption that sentences for multiple offenses would run consecutively unless the sentencing court specified the reason(s) they should run concurrently. A.R.S. § 13–708 (Supp.1986).

**7.** We have not been presented in this case with an issue regarding the validity of a guilty plea to second degree murder by a defendant unaware of the meaning of the special sentencing provision of § 13–710. We leave that issue for another day.