793 P.2d 134

**STATE of Arizona, Appellee,**

v.

**Michael Patrick LAMMIE, Appellant.**

**No. 1 CA–CR 89–216.**

Court of Appeals of Arizona,
Division 1, Department A.

March 29, 1990.

Review Denied July 3, 1990.*

---

\* Corcoran, J., of the Supreme Court, was not present and did not participate in the determination of this matter.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Criminal Div., and Paul J. McMurdie, Asst. Atty. Gen., Phoenix, for appellee.

Gilcrease & Martin by James C. Martin, Tempe, for appellant.

## OPINION

SHELLEY, Judge.

Appellant Michael Patrick Lammie (defendant) was charged with four counts of sexual assault. He later pled guilty to two amended counts of attempted sexual assault, class 3 felonies, pursuant to a plea agreement which advised him that he would be required to register as a sex offender. At sentencing, defendant for the first time stated "that on an attempted crime, that it is inappropriate to require the registration as a sex offender." The trial court ordered him to register as a sex offender. Defendant appealed only from

the requirement that he register as a sex offender, pursuant to A.R.S. § 13–3821.

## DO THE REGISTRATION REQUIRE-MENTS OF A.R.S. § 13–3821 ENCOM-PASS DEFENDANTS CONVICTED OF "ATTEMPTS"?

■ Defendant initially argues that the legislative history of A.R.S. § 13–3821 demonstrates that the statute was not intended to include "attempted" sexual offenses. Prior to 1977, the requirement for registration of sex offenders was contained in A.R.S. § 13–1271. In 1977, the legislature renumbered the section as 13–3821. Sections 13–1271 and 13–3821 listed the sexual offenses requiring registration. The list included attempted sexual offenses. Section 13–3821 was repealed in 1978.

In 1983, A.R.S. § 13–3821 was enacted. Section 13–3821 does not list any offenses by name. It requires registration of "[a] person who has been convicted of a violation of chapter 14 or 35.1 of this title." [1] Juxtaposing the language of former A.R.S. § 13–3821 with the current version, defendant concludes that the legislature's failure to specifically name "attempt" as subject to registration in the current statute "must be considered intentional and the new statute must not be read to cover that which has been deleted from the old one." Defendant points out that as a matter of statutory construction, when a statute is reenacted with material changes, it is presumed that the amendment or reenactment was intended to make those material changes. *See generally* 73 Am.Jur.2d *Statutes* § 324 (1974).

■ Generally, the court will not resort to rules of statutory interpretation unless the meaning of the language of the statute is unclear or ambiguous. *State v. Sweet,* 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985). In addition, the legislature has abrogated the common law rule that penal statutes are to be strictly construed. *State v. Perkins,* 144 Ariz. 591, 594, 699 P.2d 364, 367 (1985). Rather, statutes should be in-

1. A.R.S. §§ 13–1401 to 1416 or §§ 13–3551 to 3556.

terpreted according to the fair meaning of their terms and in furtherance of the policies underlying them. *Id.* While it is true that when the legislature amends statutory language, it is presumed that it intends to make a change in existing law, *Pace v. Hanson*, 6 Ariz.App. 88, 92, 430 P.2d 434, 438 (1967), a statutory amendment ought not to be interpreted so broadly as to destroy the entire objective of the statutory scheme. *Kadish v. Arizona State Land Dep't*, 155 Ariz. 484, 491, 747 P.2d 1183, 1190 (1987). The cases relied on by defendant to support his statutory construction argument are cases which discuss the effect of amendments to existing statutes. However, a court will not treat as amendatory an act which does not purport to be amendatory. 1A *Sutherland Statutory Construction* § 22.01 (4th ed. 1985) ("[t]he test to determine whether an act is *original* or *amendatory* in form is whether it *purports* to be independent of existing statutory provisions") (emphasis in original). A.R.S. § 13–3821 was simply not an amendatory statute. It was adopted in 1983, following a hiatus of more than five years in which no sex offender registration statute existed in Arizona.

Defendant asserts that an attempted offense is only a preparatory offense in violation of A.R.S. § 13–1001. Therefore, he posits it differs from the substantive offenses set forth in chapter 14 (A.R.S. §§ 13–1401 to 1416). The case law and statutory history with regard to the offense of attempt in Arizona demonstrate the contrary. It is in this context that the court must interpret the legislative intention in passing A.R.S. § 13–3821.

The legislative history with respect to the enactment of A.R.S. § 13–3821 in 1983 is helpful. The minutes of the Committee on Human Resources working on H.B. 2147 state: "Mr. Richard D. Nichols, Deputy County Attorney, Pima County, explained that the bill provided definitions and classifications of certain sexual offenses and required that anyone convicted of *any sex-related* offense register with the county sheriff." *Sexual Offenses: Hearings on H.B. 2147 Before the Subcomm. on Human Re-*

*sources*, 36th Leg., 1st Sess. 3 (March 8, 1983) (emphasis added).

In former A.R.S. § 13–3821, the legislature expressly listed every sex crime requiring registration. In adopting A.R.S. § 13–3821 in 1983, the legislature did *not* list any specific crime or crimes. We conclude that the legislature, by adopting the broad language of A.R.S. § 13–3821, did *not* intend to exclude attempted sexual offenses.

Defendant posits that the plain language of A.R.S. § 13–3821 demonstrates its inapplicability to preparatory offenses, such as attempts. This argument has been expressly rejected. *See State v. Cory*, 156 Ariz. 27, 749 P.2d 936 (App.1988). *See also State v. Bouchier*, 159 Ariz. 346, 767 P.2d 233 (App.1989); *cf. State v. Tellez*, 49 Ariz. Adv.Rep. 36 (Dec. 7, 1989). Defendant recognizes the adverse holdings in these cases and asserts that they should be overruled. We decline to do so.

In the case of *State v. Cory*, Division Two of the Court of Appeals stated:

> However, appellant overlooks the fact that he was convicted of a violation of Chapter 14. Pursuant to the plea agreement, appellant agreed to plead guilty to a violation of A.R.S. § 13–1001, as well as §§ 13–1406, 13–1401, 13–3821, 13–701, 13–801 and 13–808. It would have been impossible for appellant to plead guilty to solely a violation of A.R.S. § 13–1001 since that chapter must always be viewed together with a substantive offense. In this case, the Chapter 10 violation must be viewed in conjunction with the Chapter 14 violation. The purpose of the registration requirement for defendants convicted of the substantive offenses certainly is served by the registration of persons convicted of preparatory offenses.

*Id.*, 156 Ariz. at 28, 749 P.2d at 937.

An "attempt" is generally recognized as being part of a completed offense. *State v. McCurdy*, 15 Ariz.App. 227, 228, 487 P.2d 764, 765 (1971). A.R.S. § 13–110 reads:

A person may be convicted of an attempt to commit a crime, although it appears upon the trial that the crime intended or attempted was perpetrated by the person in pursuance of such an attempt, unless the court, in its discretion, discharges the jury and directs the person to be tried for the crime.

An attempted offense cannot be committed in isolation of the substantive offense.

In the case of *State v. Tellez,* this court, upon concluding that the crimes of conspiracy and solicitation are separate from the substantive offense, stated:

[T]he state's reliance on *Bouchier* and *Cory, supra,* is misplaced. Both those cases dealt with sentencing a defendant for *attempting* the underlying offense. Attempt differs from solicitation in that attempt retains the same mental state and elements as the underlying offense. Solicitation, however, remains a completely separate crime from the offense solicited.

*Id.* (emphasis added) (footnote omitted).

Defendant relies on the case of *State v. Herrera,* 131 Ariz. 59, 638 P.2d 726 (App. 1981). In *Herrera,* the issue was whether a defendant must be sentenced for attempted escape consecutively to any sentence of imprisonment for which defendant was confined at the time of the escape. *Herrera* is factually inapposite. In that case, the original statute expressly named and provided for mandatory consecutive sentences for both second-degree escape and attempted second-degree escape. When the current criminal code was adopted in 1978, the previous statute was repealed. The new statute retained the mandatory consecutive requirement for second-degree escape by name but omitted attempted second-degree escape therefrom. This deletion indicated an intent of the legislature not to require mandatory consecutive sentences for that offense. Unlike the statute involved in *Herrera,* A.R.S. § 13–3821 enacted in 1983 did not mention any offense by name.

Even so, this court in *Herrera* found the statute in question to be susceptible of more than one interpretation. It therefore concluded that it had to construe that penal statute in favor of defendant to the extent necessary to eliminate the ambiguity. This rule of construction was overruled in *State v. Rodriguez,* 153 Ariz. 182, 186, 735 P.2d 792, 796 (1987), where our supreme court stated:

Traditionally, if a criminal statute was susceptible of different interpretations, we adopted the construction most favorable to the defendant. *See, e.g., City of Phoenix v. Lane,* 76 Ariz. 240, 243, 263 P.2d 302, 303 (1953), overruled on other grounds, *Lindsey v. Duncan,* 88 Ariz. 289, 356 P.2d 392 (1960). Now, however, courts are to construe criminal statutes according to 'the fair meaning of their terms to promote justice and effect the objects of the law.' A.R.S. § 13–104; *State v. Tramble,* 144 Ariz. 48, 51, 695 P.2d 737, 740 (1985).

When a statute is unclear or ambiguous, we must determine and give effect to legislative objects and intent. *Calvert v. Farmers Insurance Co.,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). We determine this by examining the language used, the context of the statute, the subject matter, the historical background, the effects and consequences, and the spirit and purpose of the law. [*Arizona Newspapers Ass'n Inc. v. Superior Court,* 143 Ariz. 560, 694 P.2d 1174 (1985).]

Thus a basic premise in *Herrera* has been overruled by the subsequent case of *Rodriguez.* We decline to follow *Herrera* to the extent, if any, that it may be contrary to our ruling in this case.

In the case of *State v. Verive,* 128 Ariz. 570, 627 P.2d 721 (App.1981), we stated:

The primary focus of the crime of conspiracy is the agreement itself, the collusion, the secrecy and the resulting threat to society that such criminal liaisons create. The act is required as a method of showing that some step has been taken toward executing the illicit agreement. Any action sufficient to corroborate the existence of the agreement and to show that it is being put into effect is suffi-

cient to support the conspiracy. In contrast, the crime of attempt focuses more directly upon the unequivocal nature of the steps taken toward consummating the intended crime. *In attempt, the act for which the defendant is held criminally responsible, must be more than preparatory.* Perkins, in his treatise on criminal law, concludes that the 'overt act' in a conspiracy 'need not amount to an attempt to commit the crime which is the object of the combination.' Perkins, Criminal Law, 618 (2d ed. 1968).

That the overt act required for a conspiracy is different than that required for an attempt has been recognized in Arizona. In *State v. Celaya*, 27 Ariz. App. 564, 556 P.2d 1167 (1976), the court stated:

> Care must be taken not to equate the overt act required by conspiracy with the overt act required in the crime of attempt. *Whereas under the crime of attempt, mere preparation does not constitute an overt act, this is not true when dealing with the overt act required by conspiracy.* The overt act may be merely a part of preliminary arrangements for commission of the ultimate crime. *People v. Buono,* 191 Cal.App.2d 203, 12 Cal.Rptr. 604 (1961). It need amount to no more than an act showing that the conspiracy has gone beyond a mere meeting of the minds upon the attainment of an unlawful object and that action between conspirators as such has begun.

27 Ariz.App. at 569, 556 P.2d at 1172. Perkins explains further:

> The function of the 'overt act' is quite different in the two offenses. *In the case of attempt the act must go beyond preparation because the attempt is deemed a punishable segment of the crime intended.*

*Id.* at 581, 627 P.2d at 732 (emphasis added) (citations omitted). An attempt to commit an offense is more than preparatory. It is "a punishable segment of the crime intended." *Id.* Defendant was not convicted of committing an attempt. He was convicted of attempting to commit the substantive offense of sexual assault.

The unambiguous meaning of A.R.S. § 13–3821, interpreted in light of the historical and legal precedents relating to the offense of "attempt," requires that it be read to include substantive sex offenses and attempts to commit those offenses. The requirement to register as a sex offender applies to attempted sexual offenses.

### IS A.R.S. § 13–3821 VAGUE IN ITS APPLICATION TO ATTEMPTS? IF SO, DOES ITS APPLICATION TO ATTEMPTS VIOLATE DUE PROCESS?

■ Defendant asserts that there is nothing in the language of A.R.S. § 13–3821 which reasonably advises a person that an attempt to commit a sexual offense will require registration as a sex offender. We disagree. Both case and statutory law have recognized that an attempt to commit an offense is a lesser-included offense within the completed offense, be it a sexual offense or otherwise. This premise was established long before the offense was committed by defendant. This is sufficient to reasonably advise defendant that an attempt to commit a sexual offense would require registration as a sex offender.

The *Cory* opinion was published January 20, 1988, and Lammie committed the crimes on August 27, 1988. The holding in *Cory,* 156 Ariz. 27, 749 P.2d 936, provides due process notice and precludes an attack on the basis of vagueness. This premise is clearly set forth in *State v. Pickett,* 121 Ariz. 142, 145, 589 P.2d 16, 19 (1978), wherein the Arizona Supreme Court stated:

> The basic rule in reviewing a statute for vagueness is to determine whether the offense is defined in terms that people of average intelligence can understand. *State v. Varela,* 120 Ariz. 596, 587 P.2d 1173 (1978). However, when a statute has been judicially applied to a set of facts, such application provides due process notice and precludes an attack on the basis of vagueness. *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).

*Cory* clearly held that the sex offender registration requirements of A.R.S. § 13–3821 apply to an attempt to commit sex offenses.

## DOES REGISTRATION AS A SEX OFFENDER FOR AN ATTEMPTED SEXUAL OFFENSE CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION AND ART. 2, § 15 OF THE ARIZONA CONSTITUTION?

■ In his opening brief, defendant states that "defendant does not question the legislative power to oblige sex registration." Defendant goes on to state: "Imposition of registration for an attempt is cruel and unusual punishment. . . ." We disagree. An attempt to commit a sexual offense requires the same mental state and elements as the underlying offense. For example, attempted sexual assault is a lesser-included offense of sexual assault. It requires an overt act toward the completion of that offense. The intent is the same in both instances. The requirement of lifetime registration as a sex offender for an attempt to commit sexual assault does not constitute cruel and unusual punishment. This is especially true when applied to the facts in this case. The record made at the time of the change of plea clearly indicates: (1) that defendant confessed to the crimes of sexual assault on a mother and her 17–year–old daughter; that these acts occurred after he had used a knife to gain entry into their home; and (2) that he pled guilty to lesser-included offenses pursuant to a plea bargain.

Defendant relies on the case of *In re Reed*, 33 Cal.3d 914, 191 Cal.Rptr. 658, 663 P.2d 216 (1983). In that case defendant was convicted of soliciting lewd or dissolute contact from an undercover vice officer in a public rest room. Pursuant to the California penal code, he was required to register as a sex offender. The court stated: "Petitioner is not the prototype of one who poses a grave threat to society; nor does his relatively simple sexual indiscretion place him in the ranks of those who commit more heinous registrable sex offenses." *Id.* at 924, 191 Cal.Rptr. at 663, 663 P.2d at 221. The court then held by a 5 to 2 majority that to require Reed to register as a sex offender constituted cruel and unusual punishment.

An attempt to commit sexual assault is far more egregious than soliciting lewd or dissolute conduct in a public rest room. It most certainly cannot be characterized as "simple sexual indiscretion." Further, *Reed*, which we are not bound to follow, of course, did not hold that the statutory requirement to register as a sex offender upon conviction of felony sex offenses constitutes cruel and unusual punishment. Attempted sexual assault is a class 3 felony.

[8] In determining whether punishment is excessive, the United States Supreme Court has applied a proportionality rule which considers three objective criteria: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637, 649–50 (1983).

1. *Gravity of the Offense and the Harshness of the Penalty.* In this case, a mother and her 17–year–old daughter were sexually assaulted within their own home after defendant had gained entry by the use of a knife. Even if the offenses had not been completed, an attempt to commit such crimes, under the circumstances of this case, is an egregious offense. An increasing number of sexual crimes are committed within this state. A substantial portion thereof is committed by persons with a record of previous sexual crimes. Registration for lifetime places a defendant on notice that when subsequent sexual crimes are committed in the area where he lives, he will be subject to investigation. This may well have a prophylactic effect, deterring him from future sexual crimes. Furthermore, it is a proper tool to be given to police officers for use in investigating crim-

inal offenses. Lifetime registration is not unduly harsh.

2. *Other Crimes in This Jurisdiction.* A.R.S. § 13–3821 requires all defendants convicted of sex-related crimes proscribed in A.R.S. §§ 13–1401 to 1416 to register as lifetime sex offenders. The sentence is not disproportionate to other sentences imposed in Arizona.

3. *The Sentences Imposed for the Same Crimes in Other Jurisdictions.* In *Reed,* the California Supreme Court noted that in 1976, California and Nevada required sex offender registration. In *Reed,* the court did not nullify the California sex offender registration statute with regard to felony offenses. The California statute is similar to Arizona statutes as it relates to felony offenses. Nevada's sex offender statute is similar to Arizona's except that it applies only to felony offenses.

In the case of *State v. Smith,* 156 Ariz. 518, 753 P.2d 1174 (1987), Division Two of this court stated:

> Appellant has shown us the range of sentences imposed by comparable statutes from other states. *Although Arizona's statute ranks among the harshest in terms of punishment for these crimes, that fact alone is insufficient for us to find the statute unconstitutional.* As the Supreme Court observed in *Rummel v. Estelle, supra,* one state will always bear the distinction of punishing particular offenders more severely than any other state.

*Id.* at 526, 753 P.2d at 1182 (emphasis added).

It appears that at least two states have similar sex offender registration statutes. This is sufficient to fulfill the third criterion set forth in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001. Assuming *arguendo* that no other state required lifetime registration for sex offenses, this alone would not be sufficient to make the law unconstitutional. To hold otherwise would make it virtually impossible for a state to be on the leading edge in passing laws increasing punishment for criminal offenses. Such a holding would require simultaneous passage of similar laws in more than one state.

This would be improbable. This problem was duly noted in the above quotation from *Smith.*

The requirement of lifetime registration for attempted sexual offenses, especially felony offenses, does not constitute cruel and unusual punishment under either the Eighth Amendment to the United States Constitution or Art. 2 § 15 of the Arizona Constitution.

Judgment and sentence affirmed.

CONTRERAS, P.J., concurs.

EHRLICH, Judge, concurring.

I concur in the result. I believe that the majority unnecessarily reached the issue of constitutionality of sex offender registration given that the defendant did not question "the legislative power to oblige sex registration" and given the discussion of the issue of attempt.