684 P.2d 896

**STATE of Arizona, Appellant Cross-Appellee,**

v.

**Malcolm Scott RILEY, Appellee Cross-Appellant.**

**1 CA–CR 6285.**

Court of Appeals of Arizona, Division 1, Department B.

April 12, 1984.

Robert K. Corbin, Atty. Gen., by William J. Schafer III, Chief Counsel, Criminal Div., Beryl I. Dulsky, Asst. Chief Counsel, Phoenix, for appellant cross-appellee.

Aspey, Watkins & Diesel, by Bruce S. Griffen, Flagstaff, for appellee cross-appellant.

## OPINION

GREER, Judge.

The appellee/cross-appellant, Malcolm Scott Riley (defendant), was convicted after a jury trial of the crime of sale of marijuana, a class 2 felony, in violation of A.R.S. § 13–3405. After trial, he admitted the allegation of a prior felony conviction, which subjected him to the enhanced punishment provisions of A.R.S. § 13–604(B). As a repeat offender who stood convicted of a class 2 felony, he was subject to a sentencing range of not less than seven nor more than twenty-one years imprisonment. However, because defendant was only nineteen years old at the time he committed the crime, had merely acted as a go-between for the sale by his accomplice to a police informant, had only received $25.00 for his

participation in the crime and did not fully appreciate the wrongfulness of his conduct, the trial judge concluded that to apply even the minimum sentence under the enhanced punishment provisions of A.R.S. § 13–604(B) would constitute cruel and unusual punishment in violation of the Eighth Amendment. Consequently, the trial judge imposed the minimum sentence for a class 2 felony of 5.25 years imprisonment.

The state appeals from the sentence, pursuant to A.R.S. § 13–4032(6), claiming that the sentence was illegal. The state argues that the trial court was required to sentence the defendant pursuant to A.R.S. § 13–604, and that application of that statute would not constitute a violation of the Eighth Amendment. Additionally, the defendant cross-appeals, claiming that his right to cross-examination and his efforts to impeach the state's confidential informant were unduly curtailed.

## STATE'S APPEAL

When the defendant admitted the allegation of the prior conviction, the trial judge was mandated by A.R.S. § 13–604(K) to impose the enhanced punishment for a repeat offender. The statute states:

> The penalties prescribed by this section *shall* be substituted for the penalties otherwise authorized by law if the previous conviction ... is charged in the indictment or information and admitted or found by the trier of fact.

[Emphasis added]

The trial judge recognized this obligation, but found that to impose an enhanced sentence under A.R.S. § 13–604(B) would violate the Eighth Amendment under the facts of this case. In substance, the court found that the imposition of even the minimum seven-year sentence required by A.R.S. § 13–604(B) would be so grossly disproportionate to the severity of this crime and the defendant's participation, that it would constitute cruel and unusual punishment. The trial judge imposed the minimum sentence required for a class 2 felony, having determined that he was constitu-

tionally precluded from imposing the enhanced sentence.

We agree with the trial court's finding that the facts of this case support the imposition of the minimum sentence permitted by statute. We cannot, however, agree with the conclusion that the required seven-year minimum sentence violates the Eighth Amendment. We note initially that the recent United States Supreme Court decision in *Pulley v. Harris*, —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), casts some doubt upon the necessity of our engaging in a proportionality review in this case. In any event, for the reasons stated below, we find that the sentence imposed in this case was not disproportionate to the crime.

In *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the United States Supreme Court held that a mandatory life sentence for a third time offender under the Texas recidivist statute did not violate the Eighth Amendment. The court held so, even though the defendant stood convicted only of theft by false pretenses of $120.75, with prior convictions of fraudulent use of a credit card to obtain $80.00 worth of goods and of passing a forged check in the amount of $28.36. The court noted that successful challenges to the proportionality of particular sentences would be exceedingly rare, as in a case in which a legislature makes overtime parking a felony punishable by life imprisonment.

The extremely limited use of the proportionality principle was again stressed in *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982). There, in dismissing a petition for writ of habeas corpus, the court upheld sentences totaling forty years' imprisonment and fines totaling $20,000 for convictions of two counts of possession of marijuana with intent to distribute, even though the amount of marijuana involved was approximately nine ounces.

A most recent Supreme Court case dealing with excessive sentences is *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In *Solem*, the defend-

ant was convicted of uttering a $100 "no account" check with six prior non-violent felony convictions. He was sentenced under South Dakota's recidivist statute to life imprisonment without the possibility of parole. In holding that the sentence violated the Eighth Amendment, the court recognized that the general principle of proportionality applies not only to death penalty cases, but to felony prison sentences. The court stated that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at ——, 103 S.Ct. at 3010–3011. Applying these criteria to the case before us, we find that the seven-year minimum sentence rejected by the trial court is not disproportionate to the crime for which the defendant was convicted.

Sale of marijuana has long been considered a serious crime in Arizona and in other jurisdictions. Prior to our current criminal code, the sale of marijuana carried a sentence of five years to life imprisonment without eligibility for release until a minimum of three years had been served. *See*, A.R.S. § 36–1002.07. While the mitigating factors listed by the trial court were proper factors to be considered in sentencing defendant within the range set by the legislature, they did not mandate the trial court's finding that a minimum seven-year sentence would be unconstitutional. The crime and required seven years' sentence are simply not comparable to the crime and sentence involved in *Helm*. In this case, defendant was convicted of sale of marijua-

na with a prior robbery conviction, and faced a seven-year sentence without possibility of parole until he served 4.8 years. By contrast, Helm was convicted of the far less serious crime of uttering a $100 no account check with six prior convictions involving crimes against property, and yet he was sentenced to a term of life imprisonment without possibility of parole.

As to sentences imposed on other criminals in this jurisdiction, sale of marijuana is not the only nonviolent crime which carries a class 2 felony status.[1] Additionally, similar sentences have previously been upheld in the face of Eighth Amendment attacks.[2]

Finally, the required seven-year minimum sentence is not unduly harsh when compared to potential sentences in other jurisdictions. The amount of marijuana involved in this case was between six and seven ounces. In Texas, sale of this amount would be classified as a second degree felony, and with a prior conviction, the potential punishment would be a sentence of five to ninety-nine years imprisonment. *See* Vernon's Texas Codes Annotated, Revised Civil Statutes, Art. 4476–15 § 4.05(b)(4); Vernon's Texas Codes Annotated, Penal Code, § 12.04; 12.42(b) and 12.32. In New Mexico, the sale of marijuana is a second degree felony, and carries a basic sentence of nine years, subject to one year enhancement with a prior felony conviction. *See* New Mexico Statutes Annotated, §§ 30–31–20(B)(1), 31–18–15(A)(2), 31–18–17(B).

We conclude that it was error for the trial court to find that the imposition of the enhanced punishment provisions of A.R.S. § 13–604(B) would violate the Eighth Amendment. Therefore, this case must be remanded for resentencing.

---

1. *See* A.R.S. § 13–2310 (fraudulent schemes and artifices) and A.R.S. § 13–2307(B) (knowingly trafficking in stolen property).

2. *See State v. Stadie*, 112 Ariz. 196, 540 P.2d 668 (1975), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2174, 48 L.Ed.2d 798. (Five to eight year sentence for transportation of marijuana without possibility of parole until minimum of three years served for a nineteen year old defendant who was a

first time offender and an Indian with a socioeconomic background leading to less than criminal intelligence; *State v. Davis*, 108 Ariz. 335, 498 P.2d 202 (1972) (Statutorily mandated ten year minimum sentence for transportation of marijuana with two prior convictions); and, *State v. Pike*, 133 Ariz. 178, 650 P.2d 480 (App. 1982) (Forty to fifty year sentence for possession of dangerous drugs for sale).

In reviewing the record for fundamental error, we note that after the jury returned its verdicts but before they were released, the following colloquy occurred in relation to the defendant's admission of the prior conviction:

THE COURT: Thank you, ladies and gentlemen of the jury.

We have one other matter.

When the Clerk read the indictment, not all of the indictment was read to you, ladies and gentlemen, because there is another allegation. The reason that it was not read is because it could possibly have a prejudicial effect, but there is another allegation. The Clerk will now read the second allegation.

. . . .

(Clerk read indictment including allegation of prior conviction.)

. . . .

THE COURT: Ladies and gentlemen, the defendant's plea of not guilty to the entire indictment put both allegations at issue.

Mr. Stuhff, what is the position of the defendant at this time? Does he admit or deny the truth of the allegation of the previous conviction?

(A brief discussion was held off the record between Mr. Stuhff and Mr. Riley.)

MR. STUHFF: The defendant admits that allegation, Your Honor.

THE COURT: Very well. I would like to have him stand and make the admission for the record.

DEFENDANT RILEY: Yes, Your Honor, I admit it.

THE COURT: That you were convicted in the Superior Court of Coconino County on the 25th day of August, 1980, of the crime of robbery?

DEFENDANT RILEY: Yes, sir.

THE COURT: Very well, you may be seated.

It is no longer necessary to have the issue tried to a jury.

At that point the jury was excused.

Rule 17.6, Arizona Rules of Criminal Procedure, provides that unless a defendant admits his prior conviction while testifying on the stand, the trial court must follow the procedures of Rule 17 (relating to guilty pleas) before accepting the defendant's admission of a prior conviction. The court did not comply with the requirements of the rule in this case. Under *State v. Nieto*, 118 Ariz. 603, 578 P.2d 1032 (App. 1978), we must look to the entire record to determine whether the court's failure to follow the rule is reversible error.

■ In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the court held that the defendant must be aware of three constitutional rights before his guilty plea could be considered voluntary: First, the right to a jury trial; second, the right to confront one's accusers; third, the privilege against self-incrimination. Unlike *State v. Nieto*, the record in this case does not support a finding that the defendant was aware of the rights he was waiving or the nature and range of the possible sentence which he faced by admitting the prior felony conviction. Thus, this matter must be remanded for an evidentiary hearing on this issue.

## THE DEFENDANT'S APPEAL

During the jury trial on the charge of sale of marijuana, the state presented its case through testimony of the paid informant, John Harris, the defendant's accomplice, Abel Moreno, and several police officers who were involved in the surveillance of the crime and the defendant's arrest. Their testimony reflected that approximately one week before the sale, the defendant had met John Harris in a bar in Flagstaff. At the time, Harris was working as an informant for various Arizona police agencies. He was not directed to make contact with any particular persons, but was merely paid on a case-by-case basis for information dealing with drug sales or other criminal activity. He had several discussions with the defendant about the possibility of purchasing drugs or guns from the defendant and the defendant eventually agreed to arrange a sale to Harris of approximately

one-half pound of marijuana for $350. In effect, the defendant was a "go-between" for a sale between his accomplice, Abel Moreno, and Harris. After the details of the sale were confirmed, Harris reported the proposed sale to the Flagstaff police officer for whom he was working. On the day of the sale the police wired Harris with a microphone and followed him to the location of the sale. Moreno and the defendant met with Harris as arranged, and Moreno delivered the marijuana, whereupon Harris paid him $350.00 in marked bills. Harris then left, gave the marijuana to police officers who were waiting nearby, and the police officers arrested Moreno. The police found the defendant beside a building near the site of the sale and arrested him there. According to Moreno, the defendant was paid $25.00 for his participation.

At trial, the defendant did not contend that he was not involved in the sale, but presented the sole defense of entrapment. He did not testify on his own behalf and attempted to present the defense through cross-examination of Harris, Moreno, and the police officers.

In his cross-appeal, the defendant claims that in several instances his right to cross-examination and his efforts to present impeachment testimony of other witnesses were unduly curtailed. He places his claims into three separate arguments in his opening brief.

First, the defendant argues that the trial judge committed reversible error by improperly restricting his cross-examination of Harris, Moreno and Officers Blair and Paulson.

During cross-examination of Harris, defense counsel attempted to impeach Harris' credibility by showing that Harris had a motive to lie, because he was paid for information given, and received other special considerations by the police. Counsel was permitted to elicit that Harris worked as a paid informant, the length of time he had done so, the amount of money he received not only for this case but for prior cases, the types of cases in which he was involved, and whether or not he was under a quota system. Additionally, defense counsel was permitted to question Harris as to whether he received any other benefits such as "a little extra slack or freedom," to which Harris responded no, "I go to jail just like anybody else." Defense counsel also cross-examined Officer Blair, the Flagstaff police officer for whom Harris worked, as to whether Harris received anything other than money for his services. Blair also testified that Harris was given no other consideration. On several occasions, defense counsel attempted to question Harris and Blair as to other activities in which Harris had been involved, including an alleged participation in the sale of marijuana at a junior high school and a theft of approximately $140.00 from a man named Ron Brown. The trial court sustained the state's objection to these questions. The defendant argues that this unduly restricted his right to cross-examination, since the proffered evidence was admissible to prove motive under Rule 404(B), Arizona Rules of Evidence.

While prior bad acts are admissible under Rule 404(b) to attack the credibility of a witness when the evidence tends to show a motive to lie, inherent in the rule is the assumption that the motive may be shown. Here, the defendant presented no offer of proof indicating that Harris received any special consideration by the police as a result of being an informant. While the right of cross-examination is guaranteed by both the United States and Arizona Constitutions, that right does not confer a license to run at large into irrelevant matters. *State v. Evans*, 120 Ariz. 158, 584 P.2d 1149 (1978). Additionally, the trial court has broad discretion to decide what evidence is relevant in cross-examination, and reversal will occur only when the trial judge places unreasonable limitation on cross-examination. Here, the trial court permitted great latitude in the examinations of Harris and Blair as to Harris' motives for testifying. Under these circumstances, we can find no abuse of discretion by the trial court in refusing to permit defense counsel to, in effect, go on a fish-

ing expedition as to whether Harris may have at some point in the past received some compensation, other than money, for his work as an informant. Thus, we conclude that the cross-examination was not unduly restricted as to Harris and Blair.

■ The defendant also claims that his cross-examination was unduly restricted as to Moreno, the defendant's accomplice. Prior to trial, Moreno agreed to testify against the defendant in exchange for the state permitting him to plead guilty to possession of marijuana. Defense counsel showed through Moreno's cross-examination that the plea agreement was made in exchange for his testimony and that the agreement included the fact that the state would not continue forfeiture proceedings against Moreno's automobile. The judge sustained the state's objection when defense counsel asked Moreno whether he knew at the time he entered the plea that possession of marijuana could be treated as either a felony or a misdemeanor. We find no abuse of discretion in the trial judge's ruling. There is no indication in the record that the plea agreement in any way guaranteed that Moreno's conviction could be treated as a misdemeanor. With the full details of the plea agreement before the jury, the jury could appraise the potential motive for Moreno to testify falsely. Whatever limited relevancy the speculation as to sentencing may have had, its exclusion did not constitute an abuse of discretion.

The defendant next claims that his cross-examination of Agent Paulson of the Arizona Criminal Intelligence Agency was unduly restricted. Agent Paulson testified that Harris had worked for him as an informant and that in his opinion Harris was reliable and truthful. When he was questioned as to Harris' reputation within the law enforcement community for truth or veracity, the state objected on the grounds of foundation. The judge sustained this objection, and the defendant was unable to lay any foundation through Paulson that he had any knowledge of Harris' reputation within the law enforcement community for truth or veracity. Thus, exclusion of this testimony was proper for lack of foundation.

The defendant also claims that the trial court committed reversible error by limiting his direct examination of his ex-wife, Lori Parish. After the state rested, defense counsel called Harris' ex-wife in an apparent attempt to elicit testimony that, in her opinion, Harris was a liar. However, when the question was asked, Parish testified that in her opinion Harris was basically a truthful person. When counsel asked her if Harris had always told the truth, the state objected and the objection was sustained. She then testified that she could not recall having previously made statements to defense counsel or his investigator concerning her opinion of Harris. Defense counsel then attempted to refresh her memory by reminding her that she had told them that she left Harris because he had lied to her. Again the state objected on the grounds of relevancy and the trial court sustained the objection. On appeal, defendant claims that these rulings were erroneous and that his trial counsel should have been able to elicit from Parish that she had previously labeled Harris as a "liar" and should have been able to present testimony to that effect through defendant's investigator, Lake Headly.

■ To begin, we note that the record does not fully support the defendant's claim that he was unable to elicit testimony through Parish that she previously labeled Harris a liar:

MR. STUHFF (defense counsel):

Q: Lori, did you ever tell anyone that John Clay Harris lied to you?

A: Well, yeah, I have, but, you know, for a different reason than probably what you want. It would have to do with my marriage and what that—why I would say that I figured he did, but besides that specific reason, no, that would have been the only thing I would ever have said why he lied.

Thus, the defendant did, in fact, elicit evidence through cross-examination that Par-

ish had made prior inconsistent statements about her opinion of Harris' credibility.

■ Additionally, even when Parish denied having made previously inconsistent statements, or failed to remember them, the court properly precluded extrinsic evidence of the prior inconsistent statements since the attempted impeachment was on collateral matters; the defendant was bound by Parish's answer. *State v. Williams*, 111 Ariz. 511, 533 P.2d 1146 (1975).

Finally, the defendant argues that the trial court erred in precluding certain additional evidence which he offered through the testimony of John Harris, Lori Parish, Lake Headly and the Rodwellers.

The informant Harris had been accused of stealing $140 from a man named Ron Brown. Defense counsel sought to cross-examine Parish and Harris as to Harris' alleged pre-trial attempt to have Parish change her testimony regarding this incident. In his offer of proof, defense counsel also stated that he would call his investigator Headly to testify concerning the incident. The defendant argued that this evidence was important to show that the police were aware of the incident concerning Brown and did not prosecute Harris, to impeach the credibility of Parish and Harris and to demonstrate that Harris had apparently engaged in collusion and corruption in securing altered testimony from Parish.

■ The proffered testimony concerning the Ron Brown incident would not have shown that Harris had received any special treatment because of his position as an informant, and certainly did not relate to the instant crime. Thus, whatever slight inference may have been drawn from this incident reflecting on Harris' motive to testify was so remote that the trial court did not abuse its discretion in rejecting it. It was also inadmissible to impeach the credibility of Parish and Harris, as impeachment on a collateral issue. *State v. Williams, supra.*

■ To the extent that the evidence may have been relevant to show collusion and corruption, and admissible as to Harris' credibility, we find that any error in omitting the testimony was harmless beyond a reasonable doubt. The defendant's sole defense was entrapment. No evidence was presented, even through attempted cross-examination of Harris, which would support this defense.

■ Finally, defendant objects to the trial court's exclusion of the testimony of the Rodwellers. The Rodwellers were residents and managers of a motel where the informant had previously lived. Defendant made an offer of proof that they would testify that Harris previously used drugs and smoked marijuana. This testimony was offered to impeach Harris' testimony that he used marijuana only occasionally and to refute any implication that Harris only used marijuana for law enforcement purposes in infiltrating drug circles. The court rejected the evidence, citing Rules 404, 608 and 609, Arizona Rules of Evidence. We agree with the trial court's conclusion that the Rodwellers' testimony was inadmissible for the reasons given and, as noted at length above, related entirely to collateral matters.

Defendant's conviction of sale of marijuana is affirmed. The case is remanded to the superior court for an evidentiary hearing relating to defendant's admission of the prior robbery conviction. The trial court shall hold an evidentiary hearing within thirty days after the issuance of the mandate in this matter in compliance with *State v. Nieto.* If the trial court finds that the defendant was not aware of the rights he was waiving and was not aware of the nature and range of possible sentences as a consequence of his admitting the prior conviction, it shall set aside the admission of the prior conviction. The trial court shall then proceed in accordance with Rule 17.6, Arizona Rules of Criminal Procedure. If, however, the trial court finds that defendant was aware of those rights and consequences discussed above, it shall enter a sentence in accordance with this opinion and shall certify its findings of fact to this

court, together with the transcript of the evidentiary hearing.

GRANT, Acting P.J., and JACOBSON, J., concur.