753 P.2d 1174

**The STATE of Arizona, Appellee,**

v.

**Larry Allen SMITH, Appellant.**

**2 CA–CR 4469.**

Court of Appeals of Arizona,
Division 2, Department B.

Oct. 22, 1987.

Redesignated as Opinion and Publication Ordered Nov. 24, 1987.

Review Denied May 24, 1988.

Robert K. Corbin, Atty. Gen. by Eric J. Olsson, Tucson, for appellee.

Harold L. Higgins, Pima County Public Defender by Nancy F. Jones, Tucson, for appellant.

Opinion*

FERNANDEZ, Judge.

Appellant was convicted by a jury of two counts of child molestation, two counts of

* EDITOR'S NOTE: Redesignated as an opinion.

sexual conduct with a minor under 15 years of age, and one count of sexual exploitation of a minor. The court imposed consecutive, presumptive sentences under A.R.S. § 13–604.01, totaling 91 years, which, under § 13–604.01(E), must be served without the possibility of parole, commutation, pardon, work furlough or other release from confinement. Appellant was 42 at the time of sentencing.

On appeal, appellant contends as follows: 1) the police officers' 90–minute conversation with him in his motel room constituted an illegal arrest or detention; 2) the court erred in not suppressing his post-*Miranda* statements and the evidence seized from his allegedly invalid consent to search; 3) the court failed to grant his motion to continue the trial; 4) the photographs admitted into evidence did not support his conviction for sexual exploitation of a minor; 5) photographs of the victim were improperly admitted; 6) the evidence was insufficient to support a conviction on one count of sexual conduct with a minor; 7) his sentencing should have been continued; 8) enhanced sentences were improperly imposed since no allegation of dangerousness under A.R.S. § 13–604.01 was made; and 9) the sentences imposed constitute cruel and unusual punishment. We find no reversible error and affirm.

On June 30, 1985, two women at a Tucson motel observed appellant and the victim, a 10–year-old boy, in the motel swimming pool. One saw appellants's hand in the victim's bathing suit for a prolonged period of time, and the other saw appellant fondling the boy on the outside of his bathing suit. One of the women also saw appellant kissing and caressing the child. One of the witnesses notified the motel manager who called the police.

Appellant had met the victim's father approximately four years earlier because of a common interest in amateur radio. The victim and his father had been guests at appellant's summer house in Michigan on two occasions. During the summer of

1985, the victim's parents allowed appellant to take their child on a four-week motor tour of the Western states. Unknown to the family, appellant had already taken nude photographs of the victim and had molested the child on several occasions. The victim testified of fondling, digital penetration and post-defecation anal inspections in various motels from Omaha, Nebraska, to Tucson.

Four uniformed police officers contacted the appellant and the victim at their motel room at approximately 6:30 p.m. on June 30, explaining that they were there to investigate allegations of impropriety in the swimming pool between appellant and the boy. At first appellant identified the victim as his son and said any touching at the pool was accidental and could have been misconstrued. While the victim was outside with other officers, Officer Kushman remained inside the motel room and talked to appellant about matters unrelated to the alleged crimes. During that time, the victim gave a recorded statement to a detective in which he related several incidents of molestation by appellant in Tucson and in other locations, including anal penetration in the Tucson motel with the tip of a retractable metal tape measure.

After the detective notified the officers at the motel that they had probable cause, the police then arrested appellant approximately 90 minutes after they had initially made contact with him. Appellant was read his *Miranda* rights, and he said he understood them. When asked if he would be willing to answer questions, he answered, "Well, I'll try." The officers then read a written consent form to appellant, explaining that appellant could refuse to consent to the search of the motel room and require the officers to obtain a search warrant before they searched any of his property. Appellant signed the consent form and volunteered the location of approximately 60 photographs, many of which showed a hand touching the victim's genitals and anal area. Appellant admitted it was his hand that was depicted in the photographs.

At the police station a detective again read appellant the *Miranda* rights, and appellant invoked his right to remain silent. The appellant then asked the detective, "You know, did [the victim] testify or anything, or ...?" The detective answered affirmatively and told appellant what the victim had told him. Appellant explained, "I was just touching...." The detective then advised appellant not to say anything more without an attorney. Appellant then asked about the possible penalty for the crimes and made an additional statement which was not presented to the jury.

After a voluntariness hearing, the court ruled the appellant's statements were in compliance with *Miranda* and were voluntarily given. The court found that appellant voluntarily consented to a search of his motel room and refused to suppress the fruits of the search. The court also denied appellant's motion to preclude the admission of the photographs used to prove the sexual exploitation charge.

### APPELLANT'S 90–MINUTE CONVERSATION WITH POLICE

Appellant contends that the time the officers spent with him engaged in casual conversation in his motel room before they formally arrested him was an unconstitutional investigatory detention amounting to an illegal arrest. He contends that fact tainted all his subsequent statements, his consent to search, and the evidence seized in the search.

The test for "custody" is an objective one—whether under the totality of the circumstances a reasonable person would feel deprived of his freedom of action. *State v. Carter*, 145 Ariz. 101, 700 P.2d 488 (1985). The principal factors indicative of custody are "1) whether the objective indicia of arrest are present, 2) the site of the interrogation, 3) the length and form of the investigation, and 4) whether the investigation had focused on the accused." 145 Ariz. at 105, 700 P.2d at 492, quoting *State v. Perea*, 142 Ariz. 352, 355, 690 P.2d 71, 74 (1984). The fact that appellant was in his own residence, i.e., his motel room, weighs

against the fact that he was in custody prior to the formal arrest. It is clear that the investigation had focused on the appellant from the beginning. No objective indicia of arrest were present as he was not subjected to or threatened with any form of force or physical restraint, no handcuffs were used and no weapon was drawn. Appellant was not searched. There is no indication that appellant ever requested to leave the room. The only incriminating statement appellant made during that time period was the untrue assertion that the victim was his son.

 Police officers investigating a child molestation case may enter a suspect's house with his permission before advising him of his *Miranda* rights. *State v. Alder*, 146 Ariz. 125, 704 P.2d 255 (App. 1985). Here, appellant permitted the officers to enter his room. So long as a suspect is not in custody, the police may also engage in investigatory conversation with him without advising him of his *Miranda* rights. *State v. Thompson*, 146 Ariz. 552, 707 P.2d 956 (App.1985).

 In view of the fact that the officers' entry into the motel room was consensual, that almost no interrogation took place during the time period, and that there is no evidence appellant requested to leave, we find no unconstitutional detention. Another factor which supports the reasonableness of the officers' conduct is their duty to ascertain the well-being of a 10–year-old boy whom they found in a motel many miles away from his home in Illinois.

## ADMISSIBILITY OF POST–*MIRANDA* STATEMENTS AND VALIDITY OF CONSENT TO SEARCH

Appellant complains of two post-arrest incidents that occurred soon after he was read the *Miranda* rights and indicated he understood them. The first occurred at the motel and concerns a conversation about a search of the room. Appellant contends that his conversation with the officer mandated that all questioning cease until an attorney was present under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizo-*

*na*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). After appellant was read his *Miranda* rights, an officer spoke to him about the option of consenting to a search of the motel room, explaining that any evidence found in the room would be used against him and that he did not have to agree to the search. The officer explained that without his consent, the police would be required to attempt to get a search warrant which would take more time.

Appellant then asked, "Do I get to talk to a lawyer first, before I consent?" The officer advised him that he could talk to a lawyer any time. Appellant then asked whether he could see a lawyer before a search was conducted. The officer responded that he could not, that it was his intention to seek a search warrant if appellant did not consent but that his consent was optional and not obligatory. Thereafter, appellant agreed to the search and signed the written waiver which acknowledged that he understood his rights and voluntarily agreed to the search.

 On appeal, appellant argues that his questions about an attorney should be construed as a request for an attorney, even if they were ambiguous, citing *State v. Inman*, 151 Ariz. 413, 728 P.2d 283 (App. 1986). In *Inman*, Division One of this court held that the defendant's question was an ambiguous request for counsel that should have stopped all questioning other than to clarify the ambiguity. The court then found that the state had carried its burden of proving waiver of the right to counsel. This case is similar to *State v. Inman*, in that, even if appellant's questions might arguably be construed as ambiguous requests for an attorney, the record shows that appellant was familiar with *Miranda* rights and police procedures. The written consent to search also acknowledged his rights and his waiver of them. We find that the state met its burden of showing waiver, and the court did not err in admitting both the statements and the fruits of the search.

 Secondly, appellant complains about the admission of his post-arrest statements

at the police station. The state does not challenge the fact that appellant invoked his right to counsel and his right to remain silent after the detective read him his *Miranda* rights. The state contends that appellant initiated further conversation by inquiring about the victim's statement and waived those rights, citing *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), and *Edwards v. Arizona,* supra. In *Oregon v. Bradshaw,* the Supreme Court held that when a defendant asks a question about the investigation as opposed to a routine request such as for a drink of water, he initiates conversation with police. Once the defendant has initiated conversation about his case, the trial judge must determine whether, based on the facts and circumstances of each case, the defendant has knowingly and intelligently waived the right to counsel and the right to remain silent. Here, appellant had an evidentiary hearing which showed no evidence of coercion, promises or inducements. Although *Miranda* rules are designed to protect defendants from being compelled to make statements, they also give defendants the "right to choose between speech and silence." *Connecticut v. Barrett,* 479 U.S. 523, ——, 107 S.Ct. 828, 832, 93 L.Ed.2d 920, 928 (1987). We find no error in admitting the statements made at the police station.

### FAILURE TO GRANT TRIAL CONTINUANCE

Prior to trial, the court issued, at appellant's request, a certificate pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without A State in Criminal Proceedings, A.R.S. §§ 13–4091 through –4096, to secure either the testimony or records of an out-of-state witness. When the witness refused to comply with the subpoena, appellant requested a continuance of the trial, which was denied. Appellant contends the ruling denied both his right to compulsory process and the right of confrontation.

■ The witness, George Riis, a counselor for the Kendall County, Illinois, Human Services Department, had seen the victim several times after the incident, and the victim had told him that appellant had only danced around him naked. We note that the victim's credibility was highly contested throughout the trial. The victim confessed untruthfulness on cross-examination, and appellant in his opening brief contends that the victim was thoroughly impeached with exposed lies and inconsistencies. The victim also made inconsistent statements to the police. Appellant had received notes from another counselor in Illinois which he did not use at trial. The inconsistent statement made to Riis was thus merely cumulative of the victim's other prior inconsistent statements, and we find no prejudice flowing from the denial of his motion for a continuance, particularly in light of the fact that the trial had already been continued once in order to permit appellant to interview the counselor and others. See *State v. Ashelman,* 137 Ariz. 460, 671 P.2d 901 (1983), and *State v. Brady,* 122 Ariz. 228, 594 P.2d 94 (1979).

### SEXUAL EXPLOITATION OF A MINOR

Appellant claims his conviction for sexual exploitation of a minor is invalid, arguing that the mere possession of photographs cannot be made criminal under *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

Appellant was convicted under A.R.S. § 13–3553 which reads in pertinent part as follows:

A person commits sexual exploitation of a minor by knowingly:

\* \* \* \* \* \*

2. Distributing, transporting, exhibiting, receiving, selling, purchasing, possessing or exchanging any visual or print medium in which minors are engaged in sexual conduct.

It is undisputed that the photographs were not taken in Arizona. They were found in appellant's luggage after appellant told the police they were there. It is also undisputed that appellant did not show the photographs to the victim while they were in Arizona.

524

■ We find that the record clearly supports a conviction for transportation of the photographs. The victim testified that the photographs were taken in Michigan, and appellant himself told the police the photographs were in his suitcase in a motel room where appellant and the victim had stayed for two nights during their two-week trip through several states. We note that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance" to which a First Amendment obscenity standard is inapplicable. *New York v. Ferber*, 458 U.S. 747, 757, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113, 1123 (1982).

Appellant contends that even if there was evidence of transportation, the conviction must be reversed because the jury could have convicted him of merely possessing the photographs. He contends that would render the conviction invalid, citing *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), and *State v. Martin*, 139 Ariz. 466, 679 P.2d 489 (1984). Those cases are inapplicable here, however, since both involved convictions for offenses with which the defendant had not been charged in the indictment. No such issue exists in this case.

When appellant was indicted, the word "possessing" was inadvertently omitted from the count of sexual exploitation of a minor. The parties agreed to amend the indictment by adding the word "possessing," and the court made a finding that appellant was aware that he was accused of both possessing and transporting. The state has raised an issue as to whether that amendment resulted in a duplicitous indictment. Appellant's counsel stated that he had no objection to the amendment. Because there was no objection, there is no error. *State v. Kelly*, 149 Ariz. 115, 716 P.2d 1052 (App.1986).

## ADMISSIBILITY OF THE PHOTOGRAPHS

Appellant also contends that the photographs were erroneously admitted into evidence with regard to the counts of child molestation and sexual conduct with a mi-

nor. He argues that they were evidence of inadmissible prior bad acts and irrelevant. Because the photographs were taken in another state at an earlier time, appellant contends that they should have been excluded under Rule 404(b), Ariz.R.Evid., 17A A.R.S. (1986 Supp.). That rule provides that generally no prior act may be admitted to prove the character of a person in order to show that he acted in conformity with his character at the time of the charged offense. However, prior acts that tend to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident are admissible.

■ Although the court found the photographs were admissible under several exceptions, we discuss only one, since we find the admission was proper as evidence of a common scheme or plan. Both the photographs and appellant's statement about them show that he was committed to a particular scheme of keeping photographs of the victim which depict him in various stages of undress and in various ano-genital poses, some of which also include appellant's hand and fingers. Nude and semi-nude photos of a defendant's former wife, taken prior to the time he committed sexual exploitation of his minor daughter, were held to have been properly admitted under the common scheme or plan exception in *State v. Lindsey*, 149 Ariz. 493, 720 P.2d 94 (App.1985), aff'd in part, vacated in part on other grounds, 149 Ariz. 472, 720 P.2d 73 (1986). We find no error in the admission of the photographs here.

## SUFFICIENCY OF EVIDENCE

Appellant admits the state presented sufficient evidence of one act of anal penetration involving a tape measure but contends there was no evidence to support the conviction for another act of digital penetration in Tucson. We disagree.

■ The victim gave a detailed account of digital penetration in the Tucson motel room although he did not clearly fix the date of the act. Appellant concedes that the state need not prove the exact date charged in the information. *State v. Berry*, 101 Ariz. 310, 419 P.2d 337 (1966). A

child's inability to fix the exact date and time of a sexual offense may affect the credibility of his or her testimony, but it is for the jury to determine the facts, not the function of the appellate court to retry the case. *Id.* There was sufficient evidence for the jury to find appellant had committed the crime as charged.

### DENIAL OF SENTENCING CONTINUANCE

Appellant contends that he was prejudiced by the court's failure to grant his motion to continue the sentencing because he might have received the mitigated rather than the presumptive sentence if he had been allowed to obtain the counseling records of George Riis. As we discussed above, appellant learned from Riis that the victim had made inconsistent statements to him about appellant's conduct.

■■ The presentence report revealed that appellant has been a pedophile for a long time. The report contained extensive information about appellant. We also note that at sentencing, the court listed a number of aggravating circumstances it would have found if such a finding had been required. Under the circumstances, we find no abuse of discretion in the court's refusal to continue the sentencing in order for appellant to obtain the counselor's records.

### ENHANCED SENTENCING UNDER A.R.S. § 13–604.01

Appellant contends that because the state failed to file a separate allegation of dangerousness in connection with the crimes charged, the court could not properly sentence him under A.R.S. § 13–604.01. He insists that without a specific allegation of dangerousness, he could only be sentenced for non-dangerous class two felonies. We disagree.

■■ Each of the crimes of which appellant was convicted is specifically defined to provide that it "is punishable pursuant to § 13–604.01." A.R.S. §§ 13–1405(B), –1410, –3553(B). Section § 13–604.01, entitled "Dangerous crimes against children,"

specifically provides that each of the crimes involved here is a "[d]angerous crime against children." § 13–604.01(K). Appellant was specifically charged with those crimes, and the charging documents refer specifically to the statutes in question. It is clear from reading both § 13–604 and § 13–604.01 that § 13–604.01 constitutes a separate sentencing scheme for certain types of crimes committed against children under the age of 15 years. Each subsection of § 13–604 specifically excludes crimes for which sentencing is provided under § 13–604.01. The sentences specified in § 13–604.01 are mandatory, and trial courts have no option to sentence a person convicted of the crimes encompassed therein under any other section. Thus, no separate allegation of dangerousness is required, and appellant was properly sentenced under § 13–604.01.

### CONSTITUTIONALITY OF SENTENCE

Appellant's final contention is that the sentences imposed under § 13–604.01 are unconstitutional. Appellant was sentenced to two presumptive terms of 20 years each on the convictions of sexual conduct with a minor and to terms of 17 years each on the remaining three counts. Pursuant to § 13–604.01(J), the sentences must be served consecutively. Thus, appellant's total sentence is 91 years, which must be served completely without the possibility of early release. Appellant argues that the mandatory sentence in this case is grossly disproportionate to the crimes committed and that it violates the Eighth Amendment prohibition of cruel and unusual punishment.

Under our constitution, it is the function of the legislature to define crimes and to prescribe penalties. This legislative power is limited only by the constitution. It is the duty of the courts to examine a particular statute as it is applied in order to determine whether it violates a defendant's rights. In *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Court, in establishing guidelines to be used by reviewing courts in determining whether a sentence is constitutional under the Eighth Amendment, stated as follows:

In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

463 U.S. at 292, 103 S.Ct. at 3011, 77 L.Ed. 2d at 650.

The crimes involved here, sexual offenses against children under the age of 15, have been deemed "dangerous" by the legislature, A.R.S. § 13-604.01, and that designation is a legislative prerogative. *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); see also *State v. Hankins,* 141 Ariz. 217, 686 P.2d 740 (1984), and *State v. Riley,* 141 Ariz. 15, 684 P.2d 896 (App.1984). The legislature is presumed to act in a constitutional manner, and when there is a reasonable basis for the enactment of a statute, which we find in this case, the statute will be upheld upon judicial review unless it is clearly unconstitutional. *State v. Murphy,* 117 Ariz. 57, 570 P.2d 1070 (1977). Further, if the reviewing court can find any statutory purpose related to public safety or welfare, it will not question the wisdom of the legislature in enacting the statute. *State v. McInelly,* 146 Ariz. 161, 704 P.2d 291 (App. 1985).

The presentence report in this case indicates that even though this was appellant's first conviction, he had molested many children before he was arrested. In view of the appellant's longstanding "habit", as he refers to it, of sexual deviancy, the danger he poses to society requires his incarceration for a long period of time. The fact that a sentence is mandatory does not necessarily mean that it is disproportionate. See *State v. Day,* 148 Ariz. 490, 715 P.2d 743 (1986).

Appellant's contention that his sentence is unconstitutional because, in the aggregate, it exceeds his life expectancy, has been rejected by the Arizona Supreme Court. *State v. Dixon,* 153 Ariz. 151, 735 P.2d 761 (1987).

In Arizona, all similarly situated defendants who commit multiple dangerous crimes against children fall within the same range of sentencing, and all must serve their sentences in consecutive sequence. A.R.S. § 13-604.01; *State v. Crego,* 154 Ariz. 278, 742 P.2d 289 (App.1987).

Appellant has shown us the range of sentences imposed by comparable statutes from other states. Although Arizona's statute ranks among the harshest in terms of punishment for these crimes, that fact alone is insufficient for us to find the statute unconstitutional. As the Supreme Court observed in *Rummel v. Estelle,* supra, one state will always bear the distinction of punishing particular offenders more severely than any other state.

The trial judge in this case declared that but for the mandatory sentences required by the statutes, he would sentence appellant to 40 years of flat time. Although members of the judiciary may have varying opinions as to the proper sentence in this case, we find that the mandatory sentences prescribed by the legislature are within the statutory limits and that the sentences are constitutional under *Solem v. Helm,* supra.

Affirmed.