NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TRAVIS RICCI, *Appellant.*

No. 1 CA-CR 19-0194
FILED 3-25-2021

Appeal from the Superior Court in Maricopa County
No.  CR2011-005961-001
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Sharmila Roy Attorney at Law, Naperville, IL
By Sharmila Roy
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judges Cynthia J. Bailey and Lawrence F. Winthrop joined.

---

**M c M U R D I E**, Judge:

**¶1**        Travis Ricci appeals from his convictions and sentences for first-degree murder, attempted first-degree murder, aggravated assault, drive-by shooting, misconduct involving weapons, assisting a criminal street gang, and conspiracy to commit first-degree murder. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**        In 2009, Ricci was part of the white supremacist or "skinhead" group known as the Vinlanders Social Club ("Vinlanders"). On October 2, 2009, Ricci attended a party with other Vinlanders and their associates, including Aaron Schmidt. In the early morning hours of October 3, 2009, a shirtless Ricci left the party on foot.

**¶3**        A few blocks away, Karen and John, a white woman and black man, walked to their apartment from a friend's home.[2] They had consumed drugs and alcohol that evening. At some point, Karen wanted to stop to use drugs. John expressed concern that police officers would see Karen, and an argument ensued.

**¶4**        Seeing the couple arguing, Ricci approached John and loudly asked what he was doing, "speaking to a white woman like that." Ricci followed this comment with racial slurs. When Karen and John attempted to walk away, Ricci followed and yelled, "this is white power." John could see Ricci in the streetlight and noted a distinct tattoo on his stomach.

---

[1]        We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]        We use pseudonyms to protect the victims' privacy. *See* Ariz. R. Sup. Ct. 111(i); *State v. Maldonado*, 206 Ariz. 339, 341, ¶ 2, n.1 (App. 2003).

Around this time, other partygoers went looking for Ricci and found him yelling at John. Ricci eventually left with the partygoers.

¶5            Once back at the party, Ricci expressed anger that he saw a black man with a white woman and claimed John pulled a gun on him. Hearing this, Schmidt grabbed his shotgun and drove from the party with Ricci in the passenger seat.

¶6            Meanwhile, Karen and John had stopped next to a payphone to sell drugs. As Karen spoke to a buyer, John saw a vehicle pass by them and quickly circle back. John saw Ricci pull out a shotgun through the open passenger window and shoot twice, sending out multiple pellets. After the vehicle sped away, John saw Karen unconscious on the ground and contacted police officers using the payphone. Karen died of gunshot wounds to her torso and abdomen. John gave police officers a description of Ricci, providing them with details for a composite sketch of Ricci's face and sketched Ricci's tattoo. A witness came forward to report that he saw Ricci following and shouting at Karen and John the night of the shooting.

¶7            After the shooting, Ricci and Schmidt returned to the party. The men appeared agitated and indicated they needed to hide the vehicle and locate any shotgun shells. With the assistance of others at the party, they moved the car from view, buried the shotgun shells in the backyard, and hid the shotgun in the house. Later, Schmidt directed his girlfriend to bury the shotgun in the desert near Tucson. Ricci spoke of his role in the shooting to other Vinlanders and their associates. At the time of the murder, Ricci's prior felony convictions prohibited him from possessing a firearm.

¶8            Grand jurors indicted Ricci on one count of first-degree murder (Count 1), one count of aggravated assault (Count 2), one count of attempted first-degree murder (Count 3), two counts of drive-by shooting (Counts 4 and 5), one count of misconduct involving weapons (Count 6), one count of assisting a criminal street gang (Count 7), and one count of conspiracy to commit first-degree murder (Count 8). The State indicted Schmidt as Ricci's co-defendant. Schmidt, along with other Vinlanders and their associates, testified against Ricci at trial, many of them according to testimonial plea agreements with the State.

¶9            In Ricci's first trial, the superior court declared a mistrial after a witness testified that Ricci previously served a term of imprisonment. In the second bifurcated trial, the jury convicted Ricci as charged and found aggravating factors applied. The jury elected not to sentence Ricci to the death penalty for Count 1. The superior court found Ricci had two historical

prior felony convictions. It sentenced him to concurrent sentences of natural life for Count 1, life with the possibility of release after 25 years' imprisonment for Count 8, and an aggregate term of 21 years' imprisonment for Counts 4 through 7. The superior court sentenced Ricci to an aggregate term of 21 years' imprisonment for Counts 2 and 3, to be served consecutively to all other counts.

¶10 Ricci appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### A. The Superior Court Did Not Abuse its Discretion by Permitting John's Identification of Ricci at Trial.

¶11 Ricci argues the superior court abused its discretion by denying his motion to preclude John's identification of Ricci at trial. We review the fairness and reliability of a superior court's ruling on a challenged identification for an abuse of discretion. *State v. Lehr*, 201 Ariz. 509, 520, ¶ 46 (2002). We review *de novo* "the question of whether a common-law procedural rule with constitutional underpinnings, such as that set forth in *Dessureault*, applies to a particular factual scenario." *State v. Nottingham*, 231 Ariz. 21, 24, ¶ 4 (App. 2012) (quotation omitted) (citing *State v. Dessureault*, 104 Ariz. 380 (1969)).

¶12 The State is obligated to conduct pretrial identifications in a fundamentally fair manner that secures a defendant's right to a fair trial consistent with the Due Process Clause of the Fourteenth Amendment. *Lehr*, 201 Ariz. at 520, ¶ 46 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). State conducted pretrial identification procedures done in an unduly suggestive manner "may unfairly cause a witness to misidentify the defendant, and then to repeat the misidentification at trial." *State v. Smith*, 146 Ariz. 491, 496 (1985). However, an unduly suggestive pretrial identification procedure conducted by the State does not automatically bar the defendant's identification at trial. *Id*. at 496–97. "Even if a pretrial viewing is found to be suggestive, a subsequent in-court identification is admissible if it can be shown to be otherwise reliable." *State v. Fierro*, 166 Ariz. 539, 546 (1990).

¶13 Before trial, Ricci moved to preclude John from identifying him at trial, arguing John's ability to make a reliable in-court identification had been tainted. At an evidentiary hearing, testimony revealed that John gave an accurate description of Ricci and assisted in creating a composite

sketch. Still, John ultimately failed to identify Ricci in an initial photo lineup. After Ricci's arrest, police officers arrested John for an unrelated matter and placed him in a county jail unit with Ricci. Without provocation, Ricci informed John that he was accused of shooting Karen. Though John did not recognize Ricci, he asked to see Ricci's stomach and identified the tattoo as that of the shooter. At the evidentiary hearing, John positively identified Ricci in the same photo lineup police officers had shown him before Ricci's arrest. Nothing from the record indicates police officers purposefully housed John and Ricci in the same unit.

¶14 The superior court denied the motion to preclude, finding John's identification to be reliable and "even if the jail meeting was an inherently suggestive confrontation, that confrontation merely assisted the in-court identification." At trial, John identified Ricci as the shooter. The State also presented evidence that Ricci had a distinct appearance with unique tattoos, the offenses occurred in a well-lit area, and John provided an accurate description of Ricci to police officers before Ricci's arrest. Ricci cross-examined John regarding the reliability of his in-court identification, eliciting testimony that John was in-custody with Ricci, did not recognize him until prompted by Ricci, and failed to identify him in the initial photo lineup. Ricci called an expert witness who challenged eyewitness-identification reliability and accuracy.

¶15 We assume, without deciding, that the pretrial jail confrontation between Ricci and John constituted state action in reviewing Ricci's *Dessureault* claim. *See United States v. Shavers*, 693 F.3d 363, 387 (3rd Cir. 2012) (holding that when officers placed defendants and witness together in a holding cell for transport to the court, the failure to ensure that they were not separated resulted in an impermissibly suggestive pretrial identification procedure), *vacated on other grounds*, 570 U.S. 913 (2013). Nonetheless, based on the record, we do not find that the superior court abused its discretion by permitting John's identification of Ricci at trial. John provided a detailed and accurate description of Ricci directly after the offenses, helped create a composite sketch nearly identical to Ricci, and had two opportunities to view Ricci during the crimes. *See Lehr*, 201 Ariz. at 521, ¶¶ 48–51. Ricci extensively cross-examined John. John provided a substantially accurate description of Ricci after the crime, the State admitted pictures of Ricci's tattoos, and the "jury had the opportunity to assess the degree of certainty of [John's] identification." *Fierro*, 166 Ariz. at 546. Notwithstanding any alleged taint caused by John's encounter with Ricci in the jail, the jury—charged with determining witness credibility—had the opportunity to decide if the meeting tainted John's identification of Ricci at trial.

**B.**     **The Superior Court Did Not Abuse its Discretion by Precluding Ricci from Cross-Examining John Regarding an Unrelated Criminal Allegation.**

¶16          Ricci argues the superior court abused its discretion by precluding him from cross-examining John on an unrelated criminal allegation. Ricci claims this error denied him the right to present a complete defense. We review a superior court's evidentiary ruling for an abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006). The superior court "exercises considerable discretion in determining the proper extent of cross-examination, and we will not disturb the court's ruling absent a clear showing of prejudice." *State v. Doody*, 187 Ariz. 363, 374 (App. 1996).

¶17          While a defendant has a constitutional right to confront and cross-examine witnesses, *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974), the superior court has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant," *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Under Rule 608(b) of the Arizona Rules of Evidence, specific instances of conduct are typically inadmissible to attack a witness's credibility unless, on cross-examination, the instances are probative of the witness's character for truthfulness. Such evidence may still be excluded if its probative value is substantially outweighed by its potential to cause unfair prejudice or confusion. *See* Ariz. R. Evid. 403; *see also Hernandez v. State*, 203 Ariz. 196, 200, ¶ 15 (2002) (noting impeachment evidence is subject to exclusion under Rule 403).

¶18          During the trial, Ricci moved to permit cross-examination of John concerning an unrelated allegation of sexual assault. The police report associated with the allegation indicated the offense occurred at the end of January 2018. When interviewed about the allegation, John told police officers an ex-girlfriend and the reporting female sought to "frame" him for the offense. Ricci argued police officers failed to thoroughly investigate the allegation because of John's ongoing assistance in this case, and statements made by John during the investigation appeared palpably false. The State objected, arguing the uncharged allegation was inadmissible and cumulative given the significant amount of impeachment material already admitted. The superior court denied Ricci's motion, finding no evidence police officers failed to investigate the allegation to "purchase" John's testimony as John testified in a pretrial hearing before January 2018, and

additional impeachment material would amount to a "character assassination."

¶19      The court did not abuse its discretion. In cross-examination, Ricci repeatedly impugned John's character, impeaching him with evidence of his criminal convictions, inconsistent statements to police officers, personal use and sale of illegal drugs, and false information to police officers in unrelated criminal matters. The superior court permitted Ricci to paint John as a "crack dealer" with a "motivation to lie." Without addressing the merit of the allegation in question, this record does not show John falsely denied the reporting female's claims or received any benefit for testifying in this case. *See State v. Riley*, 141 Ariz. 15, 20–21 (App. 1984) (finding preclusion proper where defendant offered no proof the cooperating witness received any special consideration by authorities). Thus, the allegation did not fall within the permissible scope of Rule 608(b), and further impeachment material would have mainly been cumulative. *See* Ariz. R. Evid. 403; *Van Arsdall*, 475 U.S. at 679. The superior court acted within its discretion by limiting Ricci's cross-examination.

**C.      The Superior Court Did Not Abuse its Discretion by Denying Ricci's Requested Jury Instructions.**

¶20      Ricci argues the superior court abused its discretion by denying his request for non-standard jury instructions. We review the denial of a requested jury instruction for an abuse of discretion. *State v. Wall*, 212 Ariz. 1, 3, ¶ 12 (2006).

¶21      The superior court may refuse a requested jury instruction if it is "adequately covered by the other instructions." *State v. Hussain*, 189 Ariz. 336, 337 (App. 1997). "We review a court's decision to give a jury instruction for abuse of discretion," but review *de novo* "whether the given instruction correctly states the law." *State v. Solis*, 236 Ariz. 285, 286, ¶ 6 (App. 2014). We consider the "jury instructions as a whole to determine whether the jury was properly guided in its deliberations." *Powers v. Taser Int'l, Inc.*, 217 Ariz. 398, 400, ¶ 12 (App. 2007). To determine whether a prejudicial error occurred, "we may consider the jury instructions as given, the evidence at trial, the parties' theories, and the parties' arguments to the jury." *State v. Felix*, 237 Ariz. 280, 285, ¶ 16 (App. 2015); *see Pennsylvania v. Ritchie*, 480 U.S. 39, 52–53 (1987) (holding the right to confrontation usually is satisfied "if defense counsel receives wide latitude at trial to question witnesses").

¶22 Here, Ricci requested the court to modify the identification instruction to include language informing the jury that eyewitness testimony is fraught with issues impacting reliability, including stress, distraction, drug or alcohol use, and inadequate lighting. The requested instruction noted research shows eyewitnesses cannot accurately gauge levels of certainty and may have difficulty "accurately identifying members of a different race." Ricci further requested that the superior court instruct the jury that specific witnesses may have received benefits by cooperating with the State, possibly influencing their testimony, and jurors should evaluate their testimony "with greater caution than that of other witnesses." We find the requested instructions included impermissible comments on the evidence. Ariz. Const. art. 6, § 27.

¶23 The State objected to the requested instructions. The superior court found that the standard instructions for the credibility of witnesses and identification adequately covered the issues raised in Ricci's requested instruction. *See* Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 39 (identification) (4th ed. 2018); RAJI Stand. Crim. 18 (credibility of witnesses). However, the superior court added language that jurors could consider whether witnesses "received any monetary or other benefits" to the standard witness-credibility instruction. The superior court gave the standard identification instruction.

¶24 As noted above, Ricci thoroughly cross-examined the primary eyewitness, John, concerning his ability to provide an accurate identification and presented expert testimony challenging the reliability and accuracy of eyewitness identification. Ricci cross-examined all interested witnesses or informants testifying for the State, attacking their credibility with their criminal history, testimonial agreements, and ties to white supremacist groups. In closing argument, Ricci called into question the accuracy and credibility of eyewitnesses and informants' testimony.

¶25 The standard instructions, along with Ricci's ability to extensively challenge the reliability of eyewitness and informant testimony at trial, adequately informed the jury how to weigh the testimony and the accuracy of the identification. *See Ritchie*, 480 U.S. at 52–53; *State v. Bruggeman*, 161 Ariz. 508, 510 (App. 1989). Any further instruction would have been redundant. *See State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16 (1998) (holding the superior court need not give every requested instruction if the instructions adequately cover the law). Moreover, we have held that a cautionary instruction regarding informants, interested witnesses, or accomplices is an improper comment on the evidence in violation of Article 6, Section 27 of the Arizona Constitution. *See State v. Bussdieker*, 127 Ariz.

339, 342 (1980); *State v. Gretzler*, 126 Ariz. 60, 89 (1980), *overruled on other grounds by State v. McDaniel*, 136 Ariz. 188, 194 (1983); *State v. Korte*, 115 Ariz. 517, 519 (App. 1977). The superior court did not abuse its discretion by denying the requested instructions.

**D.    The Superior Court Did Not Abuse its Discretion by Providing the Flight or Concealment Jury Instruction.**

**¶26**        Ricci argues the superior court abused its discretion by providing the flight or concealment jury instruction.

**¶27**        A flight or concealment instruction is proper if the evidence supports a reasonable inference of either (1) open flight resulting from immediate pursuit or (2) the defendant utilized the element of concealment. *State v. Smith*, 113 Ariz. 298, 300 (1976). Such an instruction may also be provided if there is evidence of flight or concealment after an offense is committed "from which jurors can infer a defendant's consciousness of guilt." *Solis*, 236 Ariz. at 286, ¶ 7.  The decision to give the instruction depends on the case's facts and whether concealment tends to prove the crime's elements. *See State v. Salazar*, 173 Ariz. 399, 409 (1992).

**¶28**        The evidence at trial showed that Ricci fled from the shooting scene and, with conspirators' help, successfully hid or buried much of the physical evidence directly related to the offenses. Upon request by the State, the superior court provided the standard flight or concealment instruction over Ricci's objection. *See* RAJI Stand. Crim. 9 (flight or concealment).

**¶29**        Although Ricci did not conceal each item of evidence personally, he and his conspirators utilized concealment to avoid capture and prosecution. *See Smith*, 113 Ariz. at 300. Such evidence showed consciousness of guilt and demonstrated his involvement in the shooting. *See Solis*, 236 Ariz. at 286–87, ¶ 7. Accordingly, the superior court did not abuse its discretion by providing the instruction.

**E.    Double Jeopardy Did Not Bar the State from Pursuing a Second Trial.**

**¶30**        Ricci argues the prosecutor's intentional misconduct resulted in a mistrial, barring retrial under the constitutional protection against double jeopardy. He asserts the superior court abused its discretion by denying his motion to dismiss on those grounds. We review the superior court's denial of a motion to dismiss for abuse of discretion, but we examine *de novo* a claim that retrial is barred by double jeopardy. *State v. Moody*, 208 Ariz. 424, 437, 448, ¶¶ 18, 75 (2004).

¶31　　　　"The double jeopardy clause of the Fifth Amendment protects a criminal defendant from multiple prosecutions for the same offense." *State v. Minnitt*, 203 Ariz. 431, 437, ¶ 27 (2002). The double jeopardy clause bars retrial when the prosecutor engages in intentional conduct which he "knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal." *Pool v. Superior Court*, 139 Ariz. 98, 108–09 (1984). To determine whether a prosecutor's conduct, in the totality of the circumstances, bars further prosecution, the superior court should measure the prosecutor's intent or knowledge "by objective factors, which include the situation in which the prosecutor found himself, the evidence of actual knowledge and intent and any other factors which may give rise to an appropriate inference or conclusion." *Id.* at 108, n.9.

¶32　　　　During the first trial, the following line of questioning occurred with a cooperating witness:

> [Prosecutor]: At some point then after you are out of prison, do you end up reconnecting with Travis Ricci?
>
> [Witness]: Yes.
>
> 　　　　　　　*　　*　　*
>
> [Prosecutor]: Do you remember, when he gets out does he end up living with you or anybody that you know?
>
> [Witness]: I think he was out of prison before me[.]

¶33　　　　Ricci moved for a mistrial, arguing the State elicited prejudicial testimony related to his prior incarceration. Ricci's counsel, however, acknowledged the prosecutor's phrasing, "when he gets out," appeared to be a "slip." The prosecutor avowed he did not intend to elicit the testimony, seemed surprised, and maintained he admonished witnesses not to discuss Ricci's prior incarceration. In requesting that the superior court deny the mistrial motion, the prosecutor provided his notes for that witness, asked the sanction to be limited to a curative instruction, and offered to strike the witness's testimony in its entirety. Though the superior court granted the mistrial motion, the court characterized the decision as a "close call." It documented the prosecutor's notes on the record to demonstrate there was no "intentional wrongdoing."

¶34　　　　Before the second trial, Ricci moved to dismiss, arguing the prosecutor's misconduct caused the mistrial and the double jeopardy clause barred retrial. Ricci claimed the prosecutor benefited from having a new

trial, investigating the case after the first trial, and disclosing new evidence during and after the first trial. The prosecutor maintained he did not intentionally cause a mistrial. The prosecutor further avowed any newly disclosed evidence either clarified or supplemented previously disclosed evidence or contained inadmissible information disclosed in an abundance of caution. The superior court denied the motion to dismiss, finding the prosecutor "worked diligently" to prevent the jury's exposure to any prejudicial information and the appropriate sanction, declaring a mistrial, cured any error. The superior court found no disclosure violation, noting Ricci had time to review and potentially use the trial evidence.

¶35       Though the superior court believed a new trial to be warranted, the court expressly found the prosecutor did not intentionally elicit the prejudicial testimony that resulted in a mistrial. Because we pay substantial deference to the superior court's firsthand observations of a prosecutor's behavior, *State v. Martinez*, 230 Ariz. 208, 215, ¶¶ 30–31 (2012), we find no support from the record that the prosecutor's error barred retrial under the double jeopardy clause, *Pool*, 139 Ariz. at 108–09.

¶36       To the extent Ricci argues the prosecutor intended to cause the mistrial to cure potential disclosure violations, the record does not substantiate this claim. The disclosure of evidence during and after the first trial appeared inadvertent, the evidence was essentially cumulative, and the delay did not impact the outcome of the second trial. *Cf. State v. Jessen*, 130 Ariz. 1, 4 (1981) ("When previously undisclosed exculpatory information is revealed at the trial and is presented to the jury, there is no Brady violation."); *State v. Bracy*, 145 Ariz. 520, 529 (1985) (finding failure to disclose "merely cumulative" evidence did not require reversal).

¶37       Based on the totality of the circumstances, double jeopardy did not bar the State from pursuing a second trial. The superior court did not abuse its discretion by denying Ricci's motion to dismiss.

**F.       Ricci Was Not Deprived of a Fair Trial.**

¶38       Ricci argues the cumulative effect of the alleged errors denied him a fair trial. We do not recognize the doctrine of cumulative error except in the context of prosecutorial misconduct. *See State v. Hughes*, 193 Ariz. 72, 78–79, ¶ 25 (1998). Ricci has failed to demonstrate any justification for departing from this long-standing legal precedent. *See State v. Olague*, 240 Ariz. 475, 481, ¶ 23 (App. 2016) ("Stare decisis . . . requires special justification to depart from existing precedent.").

¶39       Because we find no prosecutorial error in the particular allegations, no cumulative error occurred. *See State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75 (2008).

## CONCLUSION

¶40       We affirm Ricci's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA